ANDERSON v. MONROE et al., (nine cases.)

(Circuit Court, W. D. Pennsylvania. April 5, 1893.)

No. 39.

1. PATENTS FOR INVENTIONS—ABANDONMENT—PRIOR SALE.
   In a suit for infringement of a patent, to sustain the defense that the device was exposed for sale more than two years before the patent was applied for, defendant offered evidence that an exhibit embodying that device was sold by him for the patentee at such a time, but the testimony as to the identity of the exhibit was conjectural, merely. On the other hand, there was direct evidence that this exhibit, after being offered to a purchaser who did not find it satisfactory, was stored at such witness' place of business, and was not sold until less than two years before application was made for the patent. *Held*, that the evidence was not sufficient to sustain the defense.

2. SAME—INFRINGEMENT OF DESIGN—MANTELS.
   Design patent No. 19,873, issued June 3, 1890, to William Anderson, was for a mantel in which the essential features were—First, a transverse groove giving the plain face of the pilaster the appearance of a fin-

ished and distinct base; second, the raised and rosetted caps at the top, which give the distinctive appearance of a capital to the pilaster; third, a reeded frieze, which served, in appearance, to bind the pilasters. *Held,* that this is infringed by mantels made in accordance with design patent No. 21,155, issued November 10, 1891, to Edward T. Germain, inasmuch as the latter embodies the same distinctive features, and, while changing nonessential details, retains the general appearance of the Anderson mantel.

3. SAME—INJUNCTION—FAILURE TO MARK DEVICE.
Where the infringement is shown, the failure of the patentee to mark the devices "Patented," with the date of the patent, will not affect his right to an injunction, whatever may be its bearing on the question of damages.

In Equity. Suit by William Anderson against W. T. Monroe and Edward T. Germain for infringement of complainant's patent. Decree for complainant as to defendant Monroe, and bill dismissed as to Germain.

W. L. Pierce, for complainant.
W. Bakewell & Sons, for respondent.

BUFFINGTON, District Judge. This present is one of a series of nine cases brought by William Anderson against sundry defendants for infringements of his several design mantel patents. The testimony was taken for all cases at once, and they were argued together. The present bill is against W. T. Monroe and Edward T. Germain, alleging infringement of design patent for mantels, No. 19,873, applied for by Anderson the 20th February, 1890, and granted June 3d following. The design in controversy is known as the "Anderson BB Mantel." On application the bill was heretofore dismissed as to Germain, it being shown that as to him the court had no jurisdiction. In his answer, Monroe, the respondent, admits that in August, 1890, he sold mantels of the design shown in the letters patent sued on, but that he did not know of the grant of the patent; denied subsequent infringement; averred that complainant, having before the grant of the patent sold mantels of the design afterwards patented, continued to sell them thereafter without marking them "Patented," together with the date. He denied the novelty and patentability of the design. In a supplemental answer he set up public sale, use, and exposure to sale, of the designed device, more than two years prior to the application. The novelty and patentability of this design were sustained by this court in Anderson v. Saint, (No. 22, November term, 1890,) 46 Fed. Rep. 760. No proofs now shown lead us to a different conclusion. Upon the question of prior use and sale a large amount of testimony has been taken, and the intricate and confused questions of fact therein involved have required, at the hands of the court, a most laborious examination.

Where prior use is set up to defeat a patent the burden of proof is upon the party setting it up, and "not only is the burden of proof to make good this defense upon the party setting it up, but it has been held that every reasonable doubt should be resolved against him." Cantrell v. Wallick, 117 U. S. 695, 6 Sup. Ct. Rep.

970.    The proofs in the present case do not come up to this standard. Taken in their strongest light, and supported by the most careful analysis and earnest argument of counsel, as they are, we are constrained to say they lack that conclusiveness which should avail to avoid the patent.

To their consideration we now turn.   To support the branch of the case at present considered, the respondent called Julian Morrow, manager for Heckert & McCain, lumber dealers of Pittsburgh. He said, in February, 1888, and thereafter, Anderson, the complainant, called on his firm to sell mill work, and, needing mantels, the firm proposed buying.   Witness went to complainant's mill, at Verona or Hulton, a few miles above Pittsburgh, prior to the date of the two freight bills which he produced, dated February 9 and 11, 1888, and was there shown three or four mantels, and made purchases after that.   He further says that respondent's Exhibits Anderson B Mantel and Anderson C Mantel show "the general appearance of the mantels" he saw; that the freight bills calling for nine mantels are the ones purchased, and he produces an account of Anderson against Heckert & McCain, where, under date of February 2d, they are charged with nine mantels.   He produces the books of his firm, showing that on February 21st four mantels, which he testifies were part of the foregoing, were sold to George Schmidt, and delivered to his house; that he saw them there, and identifies them as Exhibits Anderson B Mantel, supra, and respondent's Exhibit Anderson Mantel No. 1, both painted red. The Exhibit B, being of the same general appearance as design mantel BB, in controversy, would seem to show conclusively a sale more than two years prior to the application, February 20, 1888.   His attention was called to the fact that on the back of Exhibit B the name of "W. P. Price" was written in pencil.   He said that the first four mantels, (shown in the account,) under date of February 2, 1888, "were shipped to a man named Price, and we bought them from Mr. Anderson, as Mr. Price's name shows;" that during one of Anderson's visits he told him they were at the depot, where witness sent and got them; that he was able to particularly trace them by the lead-pencil mark.   We may state, in passing, that the freight bills for the mantels, dated February 9th and 11th, to which witness had already testified, and made from the manifest, showed them shipped to Heckert & McCain, and not to Price. Brown, the driver of the firm, showed that he had taken the four mantels to Schmidt's house, and it was also shown that the two red mantels (Exhibits B and No. 1) had been detached from the walls of the house, and produced in evidence.   These facts seemed to prove, beyond question, that they were two of the four thus bought from Anderson.

The necessity for the application of the rule laid down in the proof of prior use is apparent in the rebuttal testimony.   W. P. Price, whose name appears on Exhibit B, was a traveling salesman, and in the spring of 1888 began to sell Anderson mantels, on commission, in connection with grate fronts and other articles he had previously sold.   He testified, from a memorandum made in his or-

der book, that, some time subsequent to February 15th, Exhibit B was shipped to him by Anderson, to have it and three other mantels photographed, and afterwards to let the Knoxville Land Company see them, with a view of ordering some for houses to be built; that the mantels were shipped to him a week or so subsequent to said date, taken to the photographer's, and a picture taken, which picture of Exhibit B is produced. They were then taken to the land company,—just when, it is not definitely shown,—were not satisfactory, and were afterwards returned to Woodwell's hardware store by Anderson's direction. This testimony is corroborated fully by Anderson, who further says he saw the mantels at Woodwell's, disfigured and covered with coal dust; that he went to Heckert & McCain's, and asked the privilege of storing them in their shed, as they were not fit for sale; this was accorded him, and the mantels sent for by Heckert & McCain; that, a month afterwards, Morrow told him he had sold the mantels, and he was paid for them in a settlement made later. This statement is corroborated by letter of Heckert & McCain to Anderson of March 9th, which, after ordering some mantels, and urging haste, says: "We do not want to send the mantels you sent us oiled, as they are not clean, and are very much injured by sending them to the photographer's and Woodwell's." As to the other red mantel, —respondent's Exhibit Anderson No. 1,—he testifies that it was not made by him, and in this he is corroborated by the workmen in his mill. This testimony conclusively shows (1) that Exhibit B was not one of the mantels bought by Heckert & McCain from Anderson, and included in the freight bills of either February 9th or 11th; that it was one of the Knoxville mantels, and was not placed in the Schmidt house until March 16th; and that on March 9, 1888, which was less than two years before the application, it was still on storage at Heckert & McCain's as the property of Anderson. Morrow was called in rebuttal of this testimony, and has sought by the help of his letter book to fix definitely the time of his order as February 2d, and his consultation with Anderson over designs as between January 13 and February 2, 1888. But this does not avail to disprove the clear testimony in regard to Exhibit B. Whatever mantels he did order, and whenever it was done, it still remains certain that Exhibit B was not one of them. It appears by the account of Heckert & McCain with Schmidt that on March 16th Schmidt was charged with two mantels for two returned. To say that the mantel which Exhibit B thus replaced in the Schmidt house on March 16th was a BB mantel is purely conjectural, and its refutation is the pertinent inquiry why, if a BB mantel was already there, was it replaced by one of a similar design? And, indeed, respondent's counsel argue that it replaced an A mantel. We are of opinion the testimony fails to show a sale by Anderson of the BB design more than two years prior to the date of his application, February 20, 1888, nor does the testimony show an exposure to sale in the Knoxville mantels prior to February 20th. The testimony as to time is, at best, but conjectural, and not definitely proven.

v.55f.no.3—26

It is alleged that respondent has infringed the Anderson BB designs by sales of the Germain B mantel, which is made pursuant to design patent No. 21,155, applied for by Edward T. Germain 14th October, 1891, and issued 10th November following. The sales are admitted. Infringement thereby is denied. The respective mantels are shown in the accompanying cuts:

It is urged by respondent's counsel that the Anderson BB specifications show 12 distinct features: (1) Cap pieces, b, at the top of

pilaster, a; (2) rosettes, C, formed on the cap pieces, b; (*3) beveled
lower edges of the cap pieces, b; (*4) a series of reeds, e, on the pi-
lasters, A; (5) beveled outer edges of the pilasters; (6) the deep
V-shaped groove, f, across the pilasters; (*7) a series of reeds, h, on
the frieze, g; (*8) the lower beveled edge of the frieze, g; (9) a quar-
ter round molding, i, beneath the frieze, g; (10) a backing strip, k,
having a lower moulded edge; (11) a moulding, l, across the strip,
k, and caps, b; (12) molding on the upper edge of the mantel board.
That the four marked with an asterisk are not found in the Germain
design, and that there are five striking points of difference, viz:  (1)
In the appearance of the rosette on the cap blocks, they being in-
tagliated in the Germain; (2) in the Germain design there is a
raised reeded panel, J, across the frieze, which does not appear in
the Anderson design; (3) in the Germain design there is a molding,
i, running across the base of the cap piece, which is not found in the
Anderson design; (4) in the Germain the pilasters have a U-shaped
transverse groove, instead of a deep V-shaped one; (5) in the Ger-
main the edge of the mantel is moulded with grooves, while in the
Anderson it is moulded with a hollow bevel. It is true in the Germain
mantel, Exhibit B, the rosettes are more distinctly intagliated than
those on complainant's exhibit BB, but it will be noted that the
specification is not restricted to any special form of rosette.  The
drawing in the Anderson design is not shaded, and in appearance, as
well as in the language of the specification, would include the more
restricted style shown by Germain.  And, indeed, in the respondent's
Exhibit Anderson Mantel B, (which is urged as constituting a prior
sale of BB,) we find a rosette of the same contour as that used in the
Germain.

The Anderson frieze has "a series of reeds extending in the direc-
tion of its length."  The Germain has reeds extending in the direc-
tion of its length, as well, but they are placed on a narrow raised
strip placed thereon.  The reeded strip is not a material departure,
in appearance, from the reeded frieze of the Anderson design, and is
made less so by its beveled edges.  These make its raised feature
even less marked.  In the Anderson design the cap blocks taper to
the pilasters by a beveled lower edge; in the Germain, the lower
edge is also beveled, and a moulding is added, below, which gives the
effect of a grooved and deepened bevel.  In the Anderson the deep
V-shaped groove running transversely across the foot of the pilaster
is practically duplicated by a U-shaped groove in the Germain; a
difference which close inspection alone reveals.  The Anderson man-
tel board "is molded about its upper front edges," while in the Ger-
main the entire front surface of the shelf is molded by rounded edges
and reeds; a slight and unimportant change.  The reeds on the An-
derson pilasters are omitted in the Germain, but this omission, so
long as the beveled edges and transverse grooves are retained, is a
trivial one.  To the eye the striking lines of the Anderson design
are—First, the transverse groove, which gives to the plain face of
the pilaster the appearance of a finished and distinct base; secondly,
the raised and rosetted caps at the top, which give the distinctive
appearance of a capital to the pilaster; thirdly, the reeded frieze,

which serves, in appearance, to bind the pilasters. On these distinctive lines the design is based, and on them the minor details are worked out. The same distinctive lines mark the Germain design. In thus analyzing the two, one cannot but feel that the Anderson had thoroughly impressed the designor of the Germain, and that the latter was the outgrowth of a purpose to so change the nonessential details as to seem to have evolved something new, while retaining the general appearance which had proved essential to the popularity of the old. Nor, in this connection, can we lose sight of the fact that Anderson had spent several thousand dollars in experimenting and perfecting his designs before they were finally adopted, that they at once became popular, and that Germain himself copied them before the present patent was issued. And it is a pertinent fact in the present inquiry that the application for the Germain design was made a short time after the litigation of Anderson in sustaining this patent had ended in his favor. The departure from the Anderson design has been so slight in the Germain that an ordinary purchaser, who had seen the Anderson in a house, been pleased with it, and wanted it duplicated in his own, would be misled by the statement that the Germain was the Anderson mantel. It is to be noted, also, that imposition would be the easier from the fact that the two articles, in the nature of things, would rarely be placed together for comparison, as braid, spoons, and small articles might, but the mental image of the Anderson mantel, fastened to the wall of a house, would alone be carried by the purchaser to the warehouse of an attempting infringer. Tested by the law of infringement, as laid down in Gorham Co. v. White, 14 Wall. 511, and cases following its lead, we are constrained to hold the respondent has infringed the patent in suit by the sale of the Germain B mantel.

It is alleged that Anderson having simply stamped his mantels, "Our Designs Patented," and omitted the date, until October or December, 1890, respondent cannot in any way be held liable for a sale made in August, 1890, before he knew of the issue of the patent. What the effect of this might be, were it the sole issue, and the only infringement, we are not called upon to discuss, for the respondent tendered a number of other issues, denied novelty and patentability, which have not been sustained. And it has been held (Goodyear v. Allyn, 6 Blatchf. 33, and Association v. Tilden, 14 Fed. Rep. 741; 2 Rob. Pat. § 628, note 4) that this omission does not affect the right to an injunction, however it may affect the question of damages. We are of opinion the complainant's bill must be sustained. Let a decree be prepared.