## CANTRELL & Another *v.* WALLICK.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

Argued March 30, 1886.—Decided April 12, 1886.

Two patents may be valid when the second invention is an improvement on the first, and if the second includes the first, neither patentee can lawfully use the invention of the other without his consent; but a stranger, sued for infringing the second patent, cannot defend by setting up the existence of the first patent.

Two machines or devices are substantially identical when they perform substantially the same thing in substantially the same way, to obtain the same result; and they differ from each other in the sense of the patent law, when they perform different functions, or in a different way, or produce substantially different results.

*Machine Co.* v. *Murphy*, 97 U. S. 120, affirmed and applied.

The defendant in a suit for the infringement of a patent for an invention, who sets up prior use and want of novelty as a defence, has the burden of proof upon him to establish the facts set up beyond all reasonable doubt; and in this case the defendants have failed to show the alleged prior use even by preponderance of proof.

This was a bill in equity to restrain the infringement of letters patent. The case is stated in the opinion of the court.

*Mr. John Walker Shortlidge* for appellants.

*Mr. Charles Howson* for appellee.

Mr. JUSTICE WOODS delivered the opinion of the court.

This was a bill in equity filed by Wallick, the appellee, to restrain the infringement by Cantrell and Petty, the appellants, of letters patent granted to Wallick, dated May 25, 1875, for an "improvement in apparatus for enamelling mouldings;" on an application filed October 16, 1874.

The specification stated the object of the invention to be "a rapid and economical production of enamelled mouldings." It appears from the record that the mouldings referred to are those which, after being enamelled, are gilded and used for picture and mirror frames and other like purposes. In order to prepare the moulding to receive and retain the gilding it is necessary to enamel the surface to be gilded with a composition made of glue and whiting. Long before the date of the plaintiff's application the method of doing this was by passing the moulding through a vessel containing the enamelling material, the vessel having at its opposite sides and in the same line apertures of the shape of a section of the moulding, and large enough to permit the moulding to pass through and leave a proper quantity of the enamel to pass out with and adhere to it. As early as October, 1851, a patent had been granted to Robert Marcher for an improvement in machinery

for enamelling mouldings. In Marcher's contrivance the bottom of the box or hopper which contained the enamelling composition was left open. The opposite sides of the box were made with apertures of suitable size and shape for receiving the end of the moulding, and when the end of the moulding was thrust through both the apertures the moulding formed the bottom of the box. The result was that on passing a moulding through the box its face was enamelled, but its back, which did not come in contact with the composition in the box, was not.

The means used to drive the mouldings through the box were not covered by this patent; but this was done sometimes by hand and sometimes by passing them between revolving feed-rollers. The latter became the more common method. In order to give a good enamel it was necessary to pass the moulding through the box several times.

According to the contention of the plaintiff, this was the state of the art when he invented the device covered by his patent.

The specification of the plaintiff's patent stated that, in enamelling certain forms of moulding, for instance the mouldings shown in figures 2 and 3 of the drawings [page 692], feed-rollers could not be used for passing the mouldings through the Marcher box without disturbing the coats of enamel on which the upper feed-roller must bear. It then proceeded thus:

" The main aim of my invention has been to so construct an enamelling box and so form the strips of wood that feed-rollers may be employed to pass the strips through the reservoir containing the enamelling composition.

" For enamelled mouldings like Figs. 1 and 2, for instance, I prepare a strip of wood, Fig. 5, with a groove, *x*, above for receiving the upper feed-roller, and a groove, *y*, below for receiving the lower feed-roller, and then pass the strip through an enamelling box of peculiar construction, so that the rounded edges only are coated, and when these edges have received the proper number of coats I sever the strip, so as to produce either of the mouldings, Figs. 1 and 2.

" For making mouldings like Fig. 3 I prepare a strip of the

form shown by Fig. 6, so that upper and lower feed-rollers may be used to force the strip through the enamelling box.

"After the edges of the strip have been properly enamelled I

sever it in the middle, thereby producing two mouldings, like Fig. 3.

"The box by which the enamel is applied to these strips is

illustrated in the vertical section, Fig. 8, and transverse vertical section, Fig. 9, of the accompanying drawing, the box being, in the present instance, arranged for enamelling the strip, Fig. 5.

"$A$ and $A'$ are two plates, which are confined by suitable bolts $a\ a'$, two bent plates, $b\ b'$, forming, under the circumstances explained hereafter, two reservoirs, $B\ B'$, for containing the fluid or semi-fluid enamelling composition. The distance between the turned up portion, $z$, of one plate, $b$, and that of the other plate is equal to the width of the groove $y$ of the strip, Fig. 5. A permanent longitudinal bar, $d$, extends from the plate $A$ to the plate $A'$, and to each side of this bar is secured a plate, $e$, of metal, the distance across the bar and its two plates being equal to the width of the groove $x$ of the strip, Fig. 5, against the edges of which groove the said plates bear.

" In each of the plates $A\ A$ there is an opening, conforming in shape and dimensions to that of the strip, Fig. 5, and these openings bear such relations to the turned up edges of the plates $b\ b'$ and to the bar $d$ that the strip, when introduced into the box, will be in the position shown in Fig. 9, so that no parts of the strip, excepting the rounded edges, are exposed to the enamelling composition. After thus passing the end of the strip of moulding through the openings in the plates $A\ A'$ the composition may be introduced into the reservoirs $B\ B'$, for all avenues for the escape of the fluids are cut off by the strip itself.

" Feed-rollers $X\ X'$ (shown in dotted lines) may be used for forcing strip after strip through the enamelling box, the said rollers in no way interfering with the different coatings of enamel, because they are never in contact with the enamelled surfaces.

" In other words, the enamelling box is separated into two reservoirs, partly by a permanent partition and partly by the strip, which is passed through the box so that the edges only of the strip are exposed to the enamelling composition, one edge to the composition in one compartment and the other edge to that in the other compartment."

The claim was as follows :

"An enamelling box divided into two compartments by a slotted partition, and having openings at the ends in a line with the slot in the partition, all substantially as and for the purpose set forth."

The defences relied on were that the specification was too broad and embraced and appropriated the Marcher box; noninfringement; and prior use by Frederick W. Werner and T. C. Ladd & Co., of Brooklyn.

The first defence is based on the theory that a patent cannot be valid unless it is new in all its elements as well as in the combination, if it is for a combination. But this theory cannot be maintained. If it were sound no patent for an improvement on a known contrivance or process could be valid. And yet the great majority of patents are for improvements in old and well known devices, or on patented inventions. Changes in the construction of an old machine which increase its usefulness are patentable. *Seymour* v. *Osborne*, 11 Wall. 516. So a new combination of known devices, whereby the effectiveness of a machine is increased, may be the subject of a patent. *Loom Co.* v. *Higgins*, 105 U. S. 580; *Hailes* v. *Van Wormer*, 20 Wall. 353. Two patents may both be valid when the second is an improvement on the first, in which event, if the second includes the first, neither of the two patentees can lawfully use the invention of the other without the other's consent. *Star Salt Caster Co.* v. *Crossman*, 4 Cliff. 568.

Therefore, letters patent for an improvement on a patented invention cannot be declared void because they include such patented invention. Much less does it lie in the mouth of a party who is infringing both the improvement and the original invention to set up the existence of the first patent as an excuse for infringing the improvement. It is only the patentee of the original invention who has the right to complain of the use made of his invention. We are, therefore, of opinion that the first defence to the suit must fail.

On the question of infringement, a comparison of the model of the plaintiff's patent with the model of the device shown to be in use by the defendants, makes it clear that the defendants have adopted substantially the invention of the plaintiff. It

would baffle the ingenuity of the most skilled expert to show a substantial difference between the invention claimed by the plaintiff and that which it is conceded that the defendants use. It may be true, as contended by the defendants, that the device used by them is in some respects better than that of the plaintiff, but this cannot relieve them from the charge of infringement, if the devices are substantially alike. The rule was well stated by Mr. Justice Clifford, in delivering judgment in the case of *Machine Company* v. *Murphy,* 97 U. S. 120, 125, where he said that, "in determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do or what office or function they perform, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way, to obtain the same result; always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result."

Tested by this rule the charge of infringement made against the defendants is clearly made out.

It remains to inquire whether prior use and want of novelty have been shown. The prior use and consequent want of novelty alleged by the defendant was the making in 1866, and the use from that date until 1871, by Frederick W. Werner, of a box for enamelling mouldings in which the invention described in the patent of the plaintiff was embodied. Werner testified to this making and use, and to the further fact that, in 1874, he sold the box to Ladd, who some time afterwards began using it.

The burden of proof is upon the defendants to establish this defence. For the grant of letters patent is *prima facie* evidence that the patentee is the first inventor of the device described in the letters patent and of its novelty. *Smith* v. *Goodyear Dental Vulcanite Co.,* 93 U. S. 486; *Lehnbeuter* v. *Holthaus,* 105 U. S. 94. Not only is the burden of proof to

make good this defence upon the party setting it up, but it has been held that "every reasonable doubt should be resolved against him." *Coffin* v. *Ogden*, 18 Wall. 120, 124; *Washburn* v. *Gould*, 3 Story, 122, 142.

The proof of prior use in this case depends on the testimony of Werner and T. C. Ladd. The contrivance to which the testimony of these witnesses refers is not produced nor any model of it. It is merely represented in a drawing made by Werner six years after he had sold the box to Ladd.

These two witnesses are contradicted by four others who were engaged in the factory where the box was used, and who had frequently seen the box referred to when in use and the mouldings enamelled by its use. Their testimony shows that the distinctive element in Wallick's contrivance was not used in the box, but that it was substantially the old Marcher box. The defendants have, therefore, failed to show by preponderance of proof, much less beyond reasonable doubt, the prior use on which they rely. On the contrary the weight of the evidence is against this defence.

*Decree affirmed.*