## BURR *v.* FORD.

PATENTS, PRIMA FACIE EFFECT OF; PRIORITY OF INVENTION.

1. The grant of a patent is *prima facie* evidence that the patentee was the first inventor of the device described therein, and every reasonable doubt is to be resolved against one who assails the patent by endeavoring to show prior discovery or invention.

Patent Appeals, No. 22. Submitted November 16, 1894. Decided December 4, 1894.

HEARING on an appeal from a decision of the Commissioner of Patents in a patent interference proceeding. *Affirmed.*

The FACTS are sufficiently stated in the opinion.

*Mr. A. A. Birney* and *Mr. Louis K. Gillson* for the appellant.

*Mr. L. Hill* and *Mr. J. W. Hill* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of

Patents in an interference proceeding. The matter at issue is a device for coupling iron hoops for use on tanks. The appellees, Henry W. Ford and Richard M. Ferguson, were working together as early as 1890 to devise a rivetless "lug," and prepared a practical working device as early as February 15, 1890, upon which they applied for a patent, which was issued June 14, 1892. They continued their experiments by way of improvement, and as early as February 17, 1891, devised and made the "lug" in controversy. On the same day it was tried upon a tank filled with water. About March 20, 1891, the Eclipse Wind Engine Co., with which appellees were employed, shipped a pair of the new lugs to their sales agents in Chicago, who tested them partially. Subsequently they have been manufactured and put upon the market in large quantities. On August 24, 1891, they filed their application for a patent for this improved coupling device, which was allowed February 9, 1892, and patented June 14, 1892. The appellant, Nelson Burr, on September 12, 1892, filed his application for a patent upon a device substantially like that of appellees. Out of this the interference grew.

The grant of the patent to the appellees is *prima facie* evidence that they are the first inventors of the device described therein. To overcome this presumption, it is incumbent upon the appellant to show a discovery or invention prior to that of appellees, that "must have been complete and capable of producing the result sought to be accomplished. The burden of proof rests upon him, and every reasonable doubt should be resolved against him. If the thing were embryotic or inchoate; if it rested in speculation or experiment; if the process pursued for its development had failed to reach the point of consummation, it cannot avail to defeat a patent founded upon a discovery or invention which was completed, while in the other case there was only progress, however near that progress may have approximated to the end in view. The law requires not conjecture,

but certainty. If the question relate to a machine, the conception must have been clothed in substantial forms which demonstrate at once its practical efficacy and utility. The prior knowledge and use by a single person is sufficient. The number is immaterial. Until his work *is done* the inventor has given nothing to the public." *Coffin* v. *Ogden*, 18 Wall. 120, 124; see also *Cantrell* v. *Wallick*, 117 U. S. 689, 695; *Morgan* v. *Daniels*, 153 U. S. 120, 123.

Under this rule we must concur with the Commissioner in the opinion that the appellant has not established his claim to priority of invention. It is true that in 1889 he did invent this device and make a model of it. He had it cast and fitted upon a wooden block curved in about the same line as the action of an ordinary tank would be. The strength of this he seems to have tested in a measure by screwing up the tap which held the two ends together. Another was fitted upon an empty tank about the same time. It was shown in the evidence that the pressure upon the lugs, when enclosing a filled tank, is very great and very different from that which is exerted by screwing up the connecting tap. No other use seems to have been made of the coupling. The original model was preserved—that is, the one fitted upon the wooden block—and has been exhibited in evidence. The one used on the tank disappeared. The one produced lay under the work bench in the pattern shop among unused patterns and some rubbish. The company with which appellant was employed, and in which he was a stockholder, was engaged in manufacturing tanks for sale and did not then adopt their use. An attempt was made to show that some of these lugs had been manufactured and sold to the trade. On his first examination appellant stated that the lugs were first sold by his company in July or August, 1891. Upon a later examination he gave the date as March 13, 1891, and produced the shipping book of the company, showing a shipment of that date to Derby & Wilson, Morris, Illinois, of fifty pairs of lugs. There was no

description of the lugs in the order book; nothing in the recitals to indicate that they were of any peculiar make or pattern. The evidence is not at all satisfactory that these lugs were in fact of the new kind. Mr. Burr's testimony concerning them is chiefly hearsay. The salesman who sold them was called and testified that they were of the Burr pattern, but his statements are not satisfactory. He referred to this same book to aid his memory, though it appeared that he kept and used a book upon which he entered all sales as made by him while upon his trips, which was not produced. No effort was made to procure other evidence, though there were evidently other and better sources of knowledge. The purchasers, Derby & Wilson, lived in the same State, and it does not appear that they were beyond the reach of process. The burden of proof imposed upon appellant to make out his case in a clear and satisfactory manner, coupled with his long and unexplained delay in applying for a patent for this useful and valuable invention made it incumbent upon him to exhaust all reasonable means within easy reach to prove the reduction of his invention to practice. It appears that he was not without means; that he was a practical business man as well as an inventor; that he was to some extent informed with regard to the practice of the Patent Office, for he had twice before made application for patents upon his inventions—once in 1889, and once in 1892.

Upon a careful consideration of all of the evidence we are constrained to agree with the Commissioner that, "Had all that Burr did up to the reduction to practice of Ford and Ferguson been followed by nothing more on Burr's part, the invention would not have been given to the world or abandoned to the world. Its later development by Burr was not achieved with reasonable dilligence."

*The decision appealed from will be affirmed, and the proceedings and decision herein will be certified to the Commissioner of Patents in the manner required by law. It is so ordered.*