## RICHARDSON et al. v. CAMPBELL et al.

### (Circuit Court, W. D. Pennsylvania. January 27, 1896.)

**1. PRIORITY OF INVENTION—BURDEN OF PROOF.**

The defense of priority of invention by one obtaining a patent upon an application filed subsequent to the application for complainants' patent must be supported by evidence which is clear, and free from reasonable doubt.

**2. SAME—EVIDENCE—FILE WRAPPER.**

By way of defense to an infringement suit, priority of invention was alleged on the part of an inventor who secured a patent upon an application filed after the application for complainants' patent. The inventor in whom priority was alleged testified that he made the invention at a certain period long anterior to his application. In rebuttal, complainants put in evidence the file wrapper of this patent, and its contents, including certain depositions in interference proceedings, which fixed a later date as the date of the invention. *Held* that, by introducing the file wrapper, complainants did not make these depositions evidence generally in the case.

**3. SAME—GARMENT HOOK.**

The De Long patent, No. 462,473, for a garment hook, construed, and *held* valid and infringed.

This was a suit in equity by Richardson and others against Campbell & Smith for alleged infringement of a patent for a garment hook.

Strawbridge & Taylor and Bradbury Bedell (Frederick P. Fish, Jos. C. Fraley, and John G. Johnson, of counsel), for complainants.

Allan Webster and William L. Pierce, for defendants.

ACHESON, Circuit Judge. The defendants are charged with the infringement of the first claim of letters patent No. 462,473, dated November 3, 1891, and granted to Agnes A. C. Richardson, Jane E. De Long, and Ida De Long, assignees of the inventor, Frank E. De Long, upon an application filed April 2, 1891. This claim is as follows:

"(1) A garment hook consisting of a shank, a hook proper, and a tongue, continuous of each other; said tongue being looped, and normally closing the space between the shank and hook proper, and having its free end returned to the rear of the shank,—substantially as described."

The inventor states the object of the invention thus:

"My invention consists of a garment hook of the order of those known in the class of hooks and eyes; the same being constructed of front and back portions and the jaw, which projects from a central part, so as to close the hook for preventing improper disconnection of the eye."

We do not understand the defendants to insist that the hook in question lacks patentability. Indeed, such a defense would be inconsistent with the defendants' position with respect to the Brosnan patent, No. 501,320, under which they claim to manufacture. Moreover, the presumption of patentability arising from the grant of the patent in suit has not been rebutted. On the contrary, there is affirmative proof, coming as well from the side of the defendants

as from that of the plaintiffs, to show that the De Long hook, here involved, is patentably new and useful.

Two defenses only have been pressed, namely—First, noninfringement; and, second, that Cornelius J. Brosnan, to whom were issued letters patent No. 501,320, dated July 11, 1893, and granted upon an application filed August 28, 1891, was the prior inventor of a hook embodying the invention here in controversy. These defenses we will now consider, taking up, however, first, the question of priority of invention as between De Long and Brosnan.

Now, the De Long patent, in suit, is earlier than the Brosnan patent, both as regards the date of application and the date of issue. Upon the question of priority of invention, then, we start with a strong presumption in favor of De Long. To overthrow that presumption, not only is the burden of proof upon the defendants, but the evidence to support the defense must be clear, and free from reasonable doubt. Cantrell v. Wallick, 35 O. G. 871, 117 U. S. 689, 695, and 6 Sup. Ct. 670; Barbed-Wire Patent, 143 U. S. 275, 284, and 12 Sup. Ct. 443, 450. Bearing in mind this rule, we turn to the evidence. The defendants called and examined Cornelius J. Brosnan, to show that he devised and made the hook described in his above-recited patent a few days after December 23, 1887, and a number of witnesses called by the defendants have testified in corroboration of Brosnan. These witnesses, respectively, state that a specimen of the hook was shown to them in the early part of the year 1888 by Brosnan, or by one Wilkins, to whom it is alleged Brosnan had given several of the hooks. Most of these witnesses, however, saw the hook casually, and only for a few moments. All of them testified six or seven years after the event. According to Brosnan's story, he made at that time five hooks only. · Not one of these hooks has been produced. None of them were preserved. It would seem that all these hooks were considerably larger than those commonly used. It is not shown that any one of them was ever practically tested upon a garment. The defendants have not produced any hook of the kind here in question, made by Brosnan prior to the date of the application for his patent, No. 501,320. It is part of the defendants' case that immediately upon the making of this hook, in December, 1887, Brosnan recognized its utility and patentability. He had substantial pecuniary means at that time. Yet, as we have seen, his application for a patent for this hook was not made until August 28, 1891. In the meantime, on March 29, 1890, Brosnan applied for a patent for a garment hook made of sheet metal, and on May 14, 1890, the patent was allowed. Brosnan admits that in the year 1888 he made a sheet-metal hook, which, he states, he afterwards modified. Now, on June 17, 1890, Brosnan wrote a letter to the Penn Button Company, composed of the plaintiffs, inclosing a sample of his sheet-metal hook, which sample is an exhibit in this case. That letter, we think, has great significance, and we here quote it at length:

"New York, June 17, 1890.

"Dear Sirs: Inclosed find sample of our new Hook & Eye which·is a rough sample. We ar now getting ready for market, but as you have a safty and

now in market perhaps I could make some arrangements with you in pushing mine or sell the same it is for sale.

"Yours truly,                   C. J. Brosnan,

"Springfield, Mass.

"Our patent is alowed and will be ishued soon.        C. J. B."

It is very certain that the new "Hook & Eye" here spoken of, and offered for sale by Brosnan, and which, he states, "we ar now getting ready for market," was his sheet-metal hook. In the face of this letter, then, can it be credited that Brosnan had previously perfected the wire hook, for which he subsequently sought and obtained a patent?

Again, as part of their rebuttal case, the plaintiffs put in evidence the file wrapper and its contents in interference proceedings in the patent office upon Brosnan's application for letters patent No. 501,320. There Brosnan was put in interference with three other different applicants, and he filed three successive preliminary statements, dated and sworn to, respectively, on March 4, 1892, on January 2, 1893, and on May 15, 1893. In each of these preliminary statements Brosnan swore "that he conceived of the invention involved in this interference between December 1, 1889, and the last of April, 1890." In the first of these interferences, Brosnan's deposition was taken on August 2, 1892; and in that deposition he testified that he "conceived" of the invention between December 1, 1889, and the last of April, 1890, and that his "best knowledge of the date is that it was the latter part of that period." He further testified that his attention was first directed to the subject of garment hooks having the tongue or bill normally closed some time in 1889; that on March 29, 1890, he filed an application for a patent for a sheet-metal hook having a closing member under the bill; and that a patent therefor was allowed May 14, 1890, but that he never had the patent issued. And, being asked why not, he answered:

"In the meantime I found that this wire hook, such as in this interference, was going to be so much better, that I gave up the idea of the sheet metal, and turned my intention entirely to the wire hook."

Taking Brosnan's explanation for not taking out his allowed patent, in connection with his above-quoted letter of June 17, 1890, is it not perfectly clear that at the date of that letter he had not yet produced the wire hook, the subject of his application of August 28, 1891? It is quite impossible to reconcile Brosnan's testimony, and the testimony of his witnesses, in this case, with his sworn statements and testimony in the interference proceedings. Nor is it a satisfactory explanation of the discrepancies that Brosnan's memory was at fault with respect to the date of his invention, until he was set right by the better recollection of his witnesses. The testimony of some of the defendants' witnesses is open to serious suspicion. As a whole, it is unsatisfactory and unreliable. In the important matter of dates, the witnesses really speak from mere recollection, for the several collateral events to which they respectively refer have no natural connection with the main fact of which they speak. If the witnesses saw any hook in the year 1888, we are convinced

that it was the sheet-metal hook which Brosnan states he devised in that year. The testimony of the witnesses might thus be rationally explained consistently with their truthfulness. Just here it is worthy of note that on June 4, 1892, Brosnan wrote a letter to the plaintiffs, stating that he had an application for a patent for a hook pending, and inclosing a sample thereof, and offering to sell his invention. The opening sentence of that letter is in these words:

"You will find inclosed sample of Hook & Eye which I have applyed for patent about a year ago, and if you recollect I mailed you one about two years ago and offered it to you."

If this letter was penned in good faith, it is manifest that Brosnan himself was confounding his two hooks; for, undoubtedly, what he had previously mailed to the plaintiffs was a sample of his sheet-metal hook.

The defendants, it will be perceived, deliberately took the position that the date of Brosnan's invention was in December, 1887; and, in making defense, all their proofs were in support of that proposition. They did not examine any of the three witnesses who had testified in behalf of Brosnan in the interference proceedings in support of the then alleged date of his invention, namely, the spring of 1890. The suggestion that by offering the contents of the file wrapper the plaintiffs made the depositions of Brosnan's witnesses, contained therein, evidence generally here, cannot be accepted. Those depositions were not specifically offered at all, and, clearly, the only legitimate purpose of the offer of the contents of the file wrapper was to contradict Brosnan, and discredit the testimony of his witnesses, as to alleged transactions in 1888. Clow v. Baker, 36 Fed. 692; Stonemetz, etc., Co. v. Brown Folding Mach. Co., 64 O. G. 1135, 57 Fed. 601, 604. Nevertheless, upon the false assumption that the plaintiffs had made these depositions part of their case generally, the defendants called the three interference witnesses in surrebuttal, and, under objections, interrogated them with respect to their depositions. The evidence thus introduced was not surrebuttal, and the objections thereto were well taken. If it could be regarded as properly in the record, it would not help the defendants' case. The answers of these three witnesses, throughout their so-called surrebuttal examination, impress us as unsatisfactory.

We do not deem it necessary to determine whether or not the plaintiffs have succeeded in carrying the date of De Long's invention back of the date of his application, viz. April 2, 1891; for, assuming this to be the true date of his invention, still, in our judgment, upon the question of priority, the decision must be in favor of the plaintiffs, under all the proofs.

We now pass to the consideration of the defense of noninfringement. The solution of the question of infringement depends upon the construction to be given to the first claim of the patent in suit. The patent drawing shows a third securing eye, which is particularly mentioned in the specification, and is specifically called for in both the second and third claims of the patent as a component of the device therein claimed. It may be assumed that this was the

inventor's preferred form. The third eye, however, is not essential for the desired purpose, and it is not called for in and by the first claim. Therefore we do not feel at liberty to import this feature into that claim. To do that would be materially to change the patent as granted and accepted.

In the described hook of the plaintiffs' patent, the tongue wire runs out straight, and returns humped; whereas, in the defendants' hook, it runs out humped, and comes back straight. In other words, the defendants have reversed the positions of the straight and curved portions of De Long's loop. No different result is thereby secured, and the defendants' loop, as thus formed, is literally within the terms of the claim, "said tongue being looped, and normally closing the space between the shank and hook proper." Certainly, this purely formal change does not avoid infringement. Devlin v. Paynter, 69 O. G. 1365, 12 C. C. A. 188, 64 Fed. 398.

To sustain this defense, however, most stress is laid upon the words, "and having its free end returned to the rear of the shank." The defendants insist that, under this language, "the free end of the tongue wire must be carried back behind the securing eyes." To adopt this construction, the claim must be read as if it called for the return of the free end of the tongue wire to the far end of the shank, or its extreme rear; but the claim does not specify the extreme rear of the shank, and there is no warrant for introducing that qualifying word into the claim. It is not necessary to carry the free end of the tongue wire back to the extreme rear of the shank in order to accomplish the beneficial object of the invention. The construction thus contended for is not only uncalled for by the words of the claim, but it would render the claim entirely valueless; for, to escape infringement, it would only be necessary to stop the rearward return of the free end of the tongue wire at any point short of the extreme rear end of the shank. We are not able to adopt this narrow and destructive construction of the claim, and, rejecting it, we must hold the defendants' hook to be an infringement of the first claim of the patent. It will be perceived that this conclusion by no means involves the broadening of the claim. We do not depart from the fair sense of the terms employed. We conform to the rule authoritatively prescribed in Klein v. Russell, 19 Wall. 433, 466, where it is said:

"The court should proceed in a liberal spirit, so as to sustain the patent and the construction claimed by the patentee himself, if this can be done consistently with the language which he has employed."

Let a decree be drawn in favor of the plaintiffs.