## EMBOSSING CO. v. L. MUNDET & SON, Inc.

### No. 4967.

District Court, E. D. New York.
March 20, 1931.

Cooper, Kerr & Dunham, of New York City (John C. Kerr, Sturges S. Dunham, and George F. Des Marais, all of New York City, of counsel), for plaintiff.

John D. Morgan, of New York City, for defendant.

CAMPBELL, District Judge.

This is an action in equity in which the plaintiff seeks relief against the defendant by injunction and damages for the alleged infringement of patent No. 1,322,792, issued by the United States Patent Office to Charles M. Hyatt, assignor to the Embossing Company, for improvement in the manufacture of tops for bottle-stoppers, and dated November 25, 1919, on an application filed December 11, 1918.

The defendant has interposed the twofold defense of invalidity and noninfringement.

The facts found by me are stated, together with the reasons for such findings, as follows:

The plaintiff is the owner of the patent in suit.

The defendant sold to the plaintiff, at its place of business within this judicial district, the alleged infringing caps which were manufactured by the Halsam Products Company which is defending this suit.

The invention of the patent in suit is best described by the patentee in his specification, in which he says: "This invention relates to the manufacture of suitably finished and ornamented disks of wood for use as bottle-stopper tops, that is, disks to be glued or cemented to bottle-stoppers to provide a sightly finish therefor and afford convenient grasp for the fingers in removing and replacing the stopper."

He then describes the prior practices and their defects, as follows: "Heretofore wooden cork tops, as they are sometimes called, have been produced by methods which leave them rough and unsightly. In some cases they have been incased in sheet metal, such as tin-plate, plain or embossed, but such casings or coverings as a rule add but little to the appearance of the bottle, and often they are a source of annoyance by reason of sharp metallic edges and corners which are liable to injure the fingers."

After which he states the chief object of the invention and the way of overcoming the objections which he had voiced to the bottle-stopper tops theretofore made as follows: "It is accordingly the chief object of the present invention to provide a stopper-top which will materially improve the appearance of the bottle and will afford convenient, easy and comfortable grasp for the fingers in removing and replacing the stopper. A further object is to provide a top having a highly polished surface but nevertheless capable of being securely fastened to the stopper with less glue or cement than has heretofore been possible, thus effecting a considerable economy. Still another object is to provide a simple and efficient method for making my improved stopper-tops, which will turn out the articles in large quantities with unfailing accuracy and uniformity. To these and other ends the invention consists in the novel article of manufacture. * * *"

The stopper-top of the patent in suit has certain novel characteristics, the finish and configuration of the piece of wood used which are secured by a compression of the fibers both axially and radially.

Generally blanks which become disks are cut off from a previously turned rod of dry wood, having a straight grain, and these disks one by one are forced by a plunger through a tubular die, the plunger itself being a portion of the co-operative die mechanism, and which coacts with another die section at the bottom of the tubular die through which the disk is forced.

The blanks from which the cork tops are made are slightly larger in diameter and thickness than the finished tops are to be.

The plunger which is also the upper die comes down and forces into the flaring mouth of the tubular die the blank, and compresses it powerfully upon the lower die.

The blank thus undergoes powerful axial and radial compression exerted at all points simultaneously, and is forced to take perfectly the contour of the die. The edges of the blank in being forced down are subjected to a hard rubbing on the highly polished walls of the die and are themselves given a polish.

The pressure exerted is not merely a compression which is the equivalent of holding the disk against movement, but it breaks down, or tends to break down, the cellular structure of the wood, resulting in a very compact mass of material which will not

absorb moisture readily, and one that tends to retain its shape as against any elasticity that is generally found in wood.

In the manner described, forms which are sometimes highly complex and quite different from the configuration of the original disk may be secured. An octagonal finished product may, in the manner described, be made from a round disk without cutting off any of the wood.

The finished product, whatever its peripheral configuration may be, comes out with embossing on both sides, one ornamental and the other adapted to receive the top of the cork.

This suit is based only on claim 1 of the patent in suit, which reads as follows: "As a new article of manufacture, a stopper-top consisting of a disk of wood compressed axially and radially and possessing the finish and configuration imparted by such impression, as set forth."

It thus appears that in order to produce the stopper-top of the patent in suit, the disk must be powerfully compressed axially and radially, and the configuration will be that of the die, while the finish referred to in the patent in suit is attained by forcing wood through highly polished metal dies, and thus giving the wood the polish of the die.

The defendant offered in evidence the following alleged prior patents: United States patent No. 91,233, issued to John W. Hyatt, Jr., for improvement in checker-men, dated June 15, 1869, and reissue patent No. 5,760, issued to John W. Hyatt, Jr., assignor to the Embossing Company, dated February 10, 1874.

These two patents are substantially the same, except that the first was for a checker and the second for a domino, and that they state different ways of applying coloring or artificial finishes.

There is no statement in either patent that radial pressure upon the sides of the blanks is desirable, the most that is indicated is that a good fit of the blank within a die-hole is necessary.

The amount of radial compression imparted to the blank, in each of those patents, because it is slightly in excess of the proposed diameter of the finished checker or domino, is desirable to and does support and center the blank properly, but it is not sufficient to produce the stopper-tops in accordance with the teachings of the patent in suit.

Certainly, no finish such as that given to the stopper-tops of the patent in suit could be obtained without powerful compression, and as a consequence of it, a hard and highly polished finish resulting from sliding friction under powerful pressure, and of this not even a suggestion is found in either of those patents.

There is no reference in either one of those patents to any shaping or finishing of the edges of the checkers or dominoes produced according to their disclosures.

All that these patents teach is the use of slight end-grain compression for broad and shallow impressions, and no tighter fit in the die-hole than would be necessary to keep the checker or domino from splitting, and this would result from the use of a blank slightly larger than a die-hole.

Neither of these patents even suggests the invention of the patent in suit.

British patent No. 2943 A. D. 1867, issued to Newton and Swailes, for improvements in corks or stoppers for bottles, and in machinery for manufacturing the same, is related to wood turning the making of corks or stoppers for bottles of any ordinary kind of wood turned to a particular shape.

This of course did not suggest, much less teach, the invention of the patent in suit, and the fact that the edges of the tops were milled does not change the situation, as there is no teaching that any great compression, axial or radial, was necessary in milling or fluting the head of the round-headed corks or stoppers; and whatever else may be said, this patent did not teach the imparting of a finish and configuration of the character described in the patent in suit.

British patent No. 1730 A. D. 1869, issued to George William Ley, for improvements in the manufacture of ornamental articles in wood in imitation of carving.

British patent No. 371, A. D. 1868, issued to John Henry Johnson, for improvements in the treatment of compressed or embossed wood.

British patent No. 2895, A. D. 1865, issued to Alfred Vincent Newton, for improvements in the manufacture of embossed wood.

United States patent No. 771,669, issued to Adolf Schneegass, for cold process of simultaneously cutting out and stamping polished wooden articles.

There is no mention in any of the four patents last described of stopper-tops; what they deal with is the producing of book cov-

ers, moulding, panels, picture frames, and ornamentation similar to wood carving.

The patent of Ley relates to ornamenting in imitation of carving.

The patent to Johnson relates to ornamentation of wood.

The patent to Newton relates to ornamentation by end-grain compression.

The patent to Schneegass relates to cutting out and stamping wooden articles.

None of these patents teach, or even suggest, the use of powerful axial and radial compression for imparting a finish and configuration of the character described in the patent in suit.

United States patent No. 77,777, to Spaulding, dated May 12, 1868, for improved process for treating wood, does not relate to bottle-stoppers, and does not contain any suggestion of the invention of the patent in suit, as I have defined the same.

United States patent No. 134,286, to Isbell, dated December 24, 1872, for improvement in preparing wood for the manufacture of buttons, does not relate to bottle-stoppers, and certainly does not suggest the use of powerful axial and radial compression for imparting a finish and configuration, but teaches the preparing, pressing, and polishing of wood by the use of foreign substances to impregnate and fill the fiber, and polishing by applying the pressure by a revolving or rotating press.

The defendant also offered in evidence the two following patents, solely for the purpose of showing the state of the art, and not anticipation:

United States patent No. 265,118, issued to Gerhard Luyties and Henry E. G. Luyties, for bottle-stopper, dated September 26, 1882, shows a cork or stopper for bottles, having the inner edge of an elongated neck beveled or cut away to form a groove, and an elastic ring fitting in said groove.

There is nothing disclosed in this patent which could have aided the patentee in making the invention of the patent in suit.

United States patent No. 1,132,238, issued to Alexander Bogdanffy, for machine for manufacturing wood top corks. This patent seems to me to be entirely irrelevant, in that the machine operates to cut, and the configuration and polish are not attained by powerful axial and radial compression.

The contention of the defendant that, because of the apparent similarity in kind of machinery which is used to produce checkers and stopper-tops, there should be read into the early Hyatt patents information to indicate that all that is now known about embossing checkers and stopper-tops was previously known from those early Hyatt patents, is not sustained.

Although it may seem obvious now, it clearly was not known then, because, in all the years since 1868 until the invention of the patent in suit, no one demonstrated such knowledge, and the knowledge we now possess is wisdom born after the event.

Whether the checkers or dominoes of the early Hyatt patents could have been modified to attain the result of the invention of the patent in suit is of no moment, for the reason that the patentee of the early Hyatt patents never had in mind the adoption or use of said checkers or dominoes as stopper-tops, or the accomplishment of a similar function.

Stopper-tops broadly speaking are not a new article of manufacture, but there is no evidence that shows that a stopper-top had ever been produced prior to the invention of the patent in suit, which had been made in its entirety through the process of embossing.

Anticipation cannot be shown by the samples produced by the defendant of corks stuck onto checkers, as they do not add to the prior knowledge of checkers, or to the disclosures of the early Hyatt patents, nor can anticipation be shown by them as physical exhibits of a date subsequent to that of the patent in suit, in the absence of documentary evidence or earlier physical exhibits.

The patent in suit is prima facie evidence of both novelty and utility, and not only is the burden of proof on the defendant to overcome the presumption, but every reasonable doubt should be resolved against it. Coffin v. Ogden, 18 Wall. 120, 124, 21 L. Ed. 821; Cantrell v. Wallick, 117 U. S. 689, 6 S. Ct. 970, 29 L. Ed. 1017; Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, 23 L. Ed. 952.

Defendant contends that the presumption of validity is weakened because the Examiner, when the patent in suit was before the Patent Office, did not cite as references what defendant contends were better references, to wit: J. W. Hyatt, patent No. 91,233, for checkers, and J. W. Hyatt, reissue patent No. 5,760, for dominoes; but that contention was not sustained.

The best possible reference was the patent to J. W. Hyatt, No. 987,368, of March 21, 1911, cited by the Examiner in the file history of the patent in suit.

The J. W. Hyatt in question was the same J. W. Hyatt, Jr., who was the patentee of

patent No. 91,233, and reissue patent No. 5,-760, and who was undoubtedly one of the best-informed persons as to what was shown by the prior art, and he in his patent No. 987,-368 clearly shows that, although a considerable advance had been made in the Hyatt patent No. 987,368, he had not grasped the full significance of the invention of the patent in suit, and does not teach the imparting of a finish and configuration of the character described in the patent in suit, by the use of powerful axial and radial compression.

If there was any doubt as to the validity of the patent in suit, the great commercial success of the invention of the patent in suit would be persuasive of its validity.

No such doubt exists.

The patent in suit is valid.

Infringement by the defendant was plainly shown, as the defendant's product sold to the plaintiff was undoubtedly a disk of wood, compressed axially and radially, and to which had been imparted by such compression the finish and configuration.

This was shown by the split samples of the defendant's stopper-tops, as the condition of the fibers showed that the top had been produced as the result of powerful axial and radial compression, and that the cork-receiving recess had been formed while the top was under extreme axial and radial compression, and that the tops had been shaped and finished as the result of the forces acting in forming a stopper-top from a blank.

With all the art from which to choose, the defendant passed it by and deliberately sold an imitation of the stopper-top of the patent in suit, while at the same time denying novelty and invention of the patent in suit; but actions speak louder than words.

"The imitation of a thing patented by a defendant, who denies invention, has often been regarded, perhaps especially in this circuit, as conclusive evidence of what the defendant thinks of the patent, and persuasive of what the rest of the world ought to think. David v. Harris, 206 F. 902, 904, 124 C. C. A. 477; Smith v. Peck (C. C. A.) 262 F. 415, 417." Kurtz v. Belle Hat Lining Co. (C. C. A.) 280 F. 277, 281.

As conclusions of law, I find:

That the patent in suit is valid.

That the patent in suit has been infringed by the defendant.

That plaintiff is entitled to a decree against the defendant for an injunction, damages, and costs.

A decree may be entered in favor of the plaintiff against the defendant for an injunction, with costs and the usual order of reference.

Settle on notice.

If this opinion is not considered a sufficient compliance with the rule requiring findings of fact and conclusions of law, then, for the assistance of the court, proposed findings of fact and conclusions of law in accordance with this opinion may be submitted.