234 F.2d 279
 KRAFT FOODS COMPANY, Plaintiff-Appellee,
v.
WALTHER DAIRY PRODUCTS and The Borden Company, Defendants-Appellants.
KRAFT FOODS COMPANY, Plaintiff-Appellee,
v.
WISCONSIN SWISS AND LIMBURGER CHEESE PRODUCERS' ASSOCIATION, Cheese Producers' Marketing Association and Intervenor Wild Cooperative Cheese Company, Defendants-Appellants.
KRAFT FOODS COMPANY, Plaintiff-Appellee,
v.
STATE OF WISCONSIN, Intervenor-Defendant-Appellant.
 Nos. 11199-11201.
 United States Court of Appeals Seventh Circuit.
 June 19, 1956.
 Rehearing Denied August 1, 1956.
 
 W. Philip Churchill, New York City, Maxwell Barus, New York City, E. L. Wingert, Madison, Wis., Fish, Richardson & Neave, New York City, of counsel, for appellants Walther Dairy Products and Borden Co.
 Joseph G. Werner, Madison, Wis., San W. Orr, Madison, Wis., Trayton L. Lathrop, Thomas, Orr, Isaksen & Werner, Madison, Wis., of counsel, for appellants Wisconsin Swiss & Limburger Cheese Producers' Ass'n, Cheese Producers' Marketing Ass'n and intervenor Wild Cooperative Cheese Co.
 Roy G. Tulane, Asst. Atty. Gen., Vernon W. Thomson, Atty. Gen., for State of Wisconsin.
 Cyril A. Soans, Victor P. Kayser, Chicago, Ill., Glen W. Stephens, Madison, Wis., Edwin M. Luedeka, Soans, Glaister & Anderson, Snyder, Chadwell & Fagerburg, Chicago, Ill., Stephens, Bieberstein, Cooper & Bruemmer, Madison, Wis., of counsel, for appellee Kraft Foods Co.
 Before FINNEGAN, SWAIM and SCHNACKENBERG, Circuit Judges.
 FINNEGAN, Circuit Judge.
 
 
 1
 Three appeals[1] were taken from a single judgment entered February 26, 1954, in this patent infringement action involving U. S. Letters Patent No. 2,494,636 issued January 17, 1950 to plaintiff, Kraft Foods Company as assignee of the inventor James Bryan Stine. We use the references "Stine" or "636," as designating the method patent in issue containing this introductory paragraph:
 
 
 2
 "The Emmenthaler type of cheese or process originated in Switzerland, and the cheese of that type made in the United States is, for that reason, generally called `Swiss' cheese. For the purpose of this case, a cheese of the Swiss type is considered to be a cheese made by the Emmenthaler or Swiss process * * *."[2]
 
 
 3
 The Stine patent was held valid by the trial judge as to each of its following four claims:
 
 
 4
 "1. The improvement in the art of making a body of natural cheese of the Swiss type which comprises applying a coat of extensible, flexible, fluid-proof sealing material to the exterior surface of the uncured body to seal the surface of said body prior to eye development in a warm room and curing the sealed body in the warm room while confining the body under controlled pressure within an expandable mold, said mold expanding during the curing operation under the internal pressure generated within said body by the curing process.
 
 
 5
 "2. The improvement in the art of making a body of natural cheese of the Swiss type, which comprises sealing the exterior surface of the uncured body prior to eye development in a warm room, enclosing the sealed body in a mold of such capacity that the body volume increase caused by the development of eyes within the body will cause the body to snugly fill said mold, and placing the enclosed, sealed body in the warm room to effect the development of eyes.
 
 
 6
 "3. The improvement in the art of making a body of natural cheese of the Swiss type, which comprises applying a coat of flexible, fluid-proof, sealing material to the exterior surface of the uncured body prior to eye development in a warm room, enclosing the sealed body in a mold of such capacity that the body volume increase caused by the development of eyes will cause the body to snugly fill said mold, and placing the enclosed, sealed body in the warm room to effect the development of eyes.
 
 
 7
 "4. The improvement in the art of making a body of natural cheese of the Swiss type from cow's milk containing about 3.5% of fat, which comprises sealing the exterior surface of the uncured body prior to eye development in a warm room, enclosing the sealed body in a mold of such capacity that the body volume increase caused by the development of eyes within the body will cause the body to snugly fill said mold, and placing the enclosed, sealed body in the warm room to effect the development of eyes."
 
 
 8
 From the conclusions of law, filed below, it is clear that the critical claims are numbers three and four; that they are the focal points of the welter of briefs, documents, exhibits, and 3000 page record brought here by the parties.
 
 
 9
 Under our earlier decision in Hazeltine Research v. Admiral Corp., 7 Cir., 1950, 183 F.2d 953, 955, we would reverse this judgment adverse to these defendants-appellants only for "clearly erroneous" findings. For what we there quoted from Graver Tank & Mfg. Co. v. Linde Air Products Co., 1949, 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672, is controlling here. No sound legalistic basis has been found, after an extensive study of the record before us, warranting deviation from the Hazeltine explanation and application of Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. We will leave the judgment appealed undisturbed.
 
 
 10
 This expansive record, embracing myriad facts relevant to our considerations, successfully eludes all hopes of facile and useful distillation. However some relevant aspects of the case are shown by the trial judge's memorandum opinion reported as Kraft Foods Co. v. Walther Dairy Products, D.C.Wis.1954, 118 F.Supp. 1. The findings of fact and conclusions of law, which we have subjected to detailed study, cover pages 2846 to 2881 in the printed record. We are reluctant to extend this opinion with such a lengthy reprint, indeed we can, and do, approve them without repeating all of that part of the district judge's workload.
 
 
 11
 What first appeared as a clearly delineated trisected attack on those findings and conclusions, deteriorated when defendants' briefs were studied. For there is a marked overlapping and duplication of contentions spread out among the three groups of defendants. Accordingly we can dispose of propositions common to, and relied upon, by them rather than treat each appeal separately.
 
 
 12
 Because Stine's patent comes to issue clothed in a presumption of validity, defendants launch a multiple-pronged attack pointed at: (i) invalidating that patent, (ii) overcoming "636", and (iii) challenging the quantum of evidence required for rebutting the presumption. Various facets of such points are embedded among the clusters of issues and propositions of law relied on by each group of defendants. Thus, attempting to strike down Stine's patent, defendants display an unanimity of approach urging Stine's claims are void because they are too broad, indefinite, functional and excessive.
 
 
 13
 There is a marked affinity between this Court's observation in Colgate-Palmolive-Peet Co. v. Lever Bros. Co., 7 Cir., 1937, 90 F.2d 178, 191 and the situation now before us, viz.: "* * * It is particularly urged that the process claims are lacking in specificity. In answer thereto it may be said that appellee had no difficulty in understanding or following the teachings of * * * [the patent]" For an illustration of that statement it is only necessary to study this record and examine findings of fact numbered 75, 76, 77, and 82. United States v. Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, provides a discussion of the benchmarks employed for assaying findings made at the trial level. Relevant here is this one:
 
 
 14
 "A finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[3]
 
 
 15
 Though this record consists of parol and documentary evidence, we accept the findings of fact made below because we are convinced there is absent an error warranting reversal flowing from what would have to be our independent, de novo, findings of fact.
 
 
 16
 Defendants challenge what some of them describe as the trial judge's requirement "that the presumption * * * be overcome by proof beyond a reasonable doubt." This tenuous assertion of error has its genesis in the following paragraph of the memorandum opinion:
 
 
 17
 "The burden rests on the defendants in this action to prove beyond a reasonable doubt that the patent in suit has been anticipated by prior art or prior invention, and that the prior art use, claimed as a defense herein, was at the time adopted or followed, to an extent sufficient to create a well understood, if not established practice, capable at anytime of being resorted to, and not something incidental, indefinite and fugitive, which is hunted up and brought forward simply for the purpose of defeating the patent. The defense has wholly failed to meet this burden of proof. Cantrell v. Wallick, 117 U.S. 689, 695, 6 S.Ct. 970, 29 L. Ed. 1017". (T.R. 2830).
 
 
 18
 These defendants attempt to cut ground from under the judgment appealed by utilizing a variety of phrases lurking in sundry patent decisions. Their argument culminates with the citation of Radio Corporation of America v. Radio Engineering Laboratories, 1934, 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163, from which they extirpate several lines congenial to their position. Indeed they stamp "The holding of the Radio Engineering Lab case" as "sound and sensible." What Mr. Justice Cardozo said in the full passage, relevant here, merits repeating, 293 U.S. 1, 7-8, 55 S.Ct. 928, 931:
 
 
 19
 "A patent regularly issued, and even more obviously a patent issued after a hearing of all the rival claimants, is presumed to be valid until the presumption has been overcome by convincing evidence of error. The force of that presumption has found varying expression in this and other courts. Sometimes it is said that in a suit for infringement, when the defense is a prior invention, `the burden of proof to make good this defense' is `upon the party setting it up,' and `every reasonable doubt should be resolved against him.' * * * [citing Cantrell v. Wallick, 117 U.S. 689, 695, 696, 6 S.Ct. 970, 974, 29 L.Ed. 1017 among other cases]. Again it is said that `the presumption of the validity of the patent is such that the defense of invention by another must be established by the clearest proof — perhaps beyond reasonable doubt.' * * * The context suggests that in these and like phrases the courts were not defining a standard in terms of scientific accuracy or literal precision, but were offering counsel and [sic] suggestion to guide the course of judgment. Through all the verbal variances, however, there runs this common core of thought and truth, that one otherwise an infringer who assails the validity of a patent fair upon its face bears a heavy burden of persuasion, and fails unless his evidence has more than a dubious preponderance." (Italics added.)
 
 
 20
 What these defendants are challenging is an articulation of thoughts suggested by the trial judge regarding their failure to overcome Stine's patent. Somewhat similar language is found in Merrill v. Builders Ornamental Iron Co., 10 Cir., 1952, 197 F.2d 16, 19. Without a jury as the fact finders, the technical niceties sometimes demanded for instructions are insufficient reasons for annulling a trial judge's ultimate decision. We are unpersuaded that the evidence traced in this record hung in such delicate balance that the concept of proof mentioned by the district judge, even if subjectively held, overwhelmed his evaluation of the facts disclosed by the evidence. He made a personal plant inspection of all the various operations or steps involved in the manufacture of natural rindless block Swiss cheese. (Findings of fact 12, 13, and 14). Such intimate observations of the processes involved are closely analogous to the situation reported in Graver Tank & Manufacturing Co. v. Linde Air Products Co., 1949, 336 U.S. 271, 274-275, 69 S.Ct. 535, 93 L.Ed. 672. Much of the argument put forward by defendants has long since been dissipated by Judge Major's opinion already referred to, and reported as Hazeltine Research v. Admiral Corporation, 7 Cir., 1950, 183 F.2d 953, 955. Indeed a line, authored by Judge Major, has particular significance in the case before us: "* * * we think it apparent that there has been a tendency to place the review of patent cases in a category different from other cases." 183 F.2d 953, 955. Aside from a prolix record there is nothing esoteric about this patent case, unless it be the semantic jugglery displayed in the briefs, e. g. stale polemics about the rindless rind.
 
 
 21
 With findings of fact firmly embedded in the evidence, we turn to another major point suggested by defendants as the basis for annulling the judgment appealed. The critical claims are communications of Stine's intellectual conceptions of the "sealing step" developed by him after research and experiment; also described in his testimony from the witness stand. Words, the outer wrappings used to bundle ideas for delivery to auditors and readers, are often tools for tortured logic. Such an instance rears up here. If these claims are read and studied from an unbiased viewpoint it is apparent the "636" patent suffers none of the deficiencies defendants envisage. Most patents, like all communications, are open to as many interpretations as the ingenuity of counsel can conjure up. Practicality of meaning, however, steps in and arrests such runaway arguments. See e. g. Gear v. Fairmount Electric & Mfg. Co., 3 Cir., 1916, 231 F. 728, 731. Stine invented a process and claimed an improvement in the art of making a body of natural cheese of the Swiss type. It is abundantly clear that his patent was not limited to a particular sealing material or any one step in procedure. One demonstration of that proposition, sufficient here, appears in a passage from Amendment B, in Stine's response to the Patent Office action of April 8, 1948 (T. R. 2397, 2399): "As was pointed out in the interview, it is necessary to seal the exterior surface of the cheese in a layer of elastic-flexible or extensible fluid-proof material before the body of curd is cured in the hot room. This sealing may be effected either by dipping the cheese in a molten bath of wax, paraffin, or the like, or the sealing may be accomplished by wrapping the block of curd in a sheet of extensible flexible material such as, for example, cellophane. It is also stated that the cellophane may carry a coating of wax or other similar material. It is, of course, obvious to one skilled in the art that various other equivalent sealing materials known to the art may be used. Applicant is not trying to specifically claim any one or any group of sealing compounds but is claiming the step of sealing the exterior surface of a body of Swiss curd prior to curing in a hot room. Thus the application is not directed to packaging cheese but to a method of curing or producing an improved natural cheese of the Swiss-type." (Italics appears in the transcript of record.)[4]
 
 
 22
 When the Patent Office Board of Interference Examiners issued their opinion in Honer[5] v. Stine, 1952, 95 U.S. P.Q. 373, 387 they stated, inter alia:
 
 
 23
 "Since Honer did not have a complete conception of the invention in issue he could not have communicated it to his opponent. * * *
 
 
 24
 "Honer has failed to establish actual reduction to practice as alleged. Honer has failed to prove the charge of derivation.
 
 
 25
 "Priority of invention of the subject matter in issue is hereby awarded to James Bryan Stine the senior party."
 
 
 26
 That recitation, because it neatly epitomizes a telling facet of the present appeal is quoted here, but only for that reason. The interference proceedings have not influenced our decision. We regard the district court's findings sustained by substantial evidence. Indeed the record demonstrates Stine added to the sum of useful knowledge. The question of validity of a patent, a question of law, was correctly decided by the trial judge.
 
 
 27
 It seems plain to us, without detailing and reporting each piece of vital evidence, this record demonstrates that some new teachings were patented first by Stine. His process is what enjoys protection against infringement. We refuse to invalidate his patent by upsetting the judgment under review. After mature deliberations we found so little substance in the variety of points sponsored by the defendants that any detailed or further discussion here is needless. Our canvass of this record, measured by all the contentions defendants urge, has well satisfied us of the absence of any reversible or prejudicial errors. Accordingly the entire judgment is affirmed.
 
 
 28
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Walther Dairy Products and The Borden Company appealed in Number 11199. Wild Cooperative Cheese Company intervened as a defendant in Number 11200 and joined in the brief of Wisconsin Swiss And Limburger Cheese Producers' Association, and Cheese Producers' Marketing Association. The State of Wisconsin filed a separate brief and appeal in Number 11201
 
 
 [2]
 The word "case," of course, is employed in Stine's patent. Column 1. T.R. 2953
 
 
 [3]
 Footnotes of the Court has been omitted
 
 
 [4]
 See e. g. Lines 40 to 48, Column 5 of the Stine patent and his testimony on redirect. T.R. 417-418
 
 
 [5]
 Clemence J. Honer, an employee of the State of Wisconsin, a party in this appeal, who filed an application for a patent and assigned his rights to the State of Wisconsin. Hence the State's contention before us that asparens patriae, it resists assertion of an allegedly invalid monopoly by Kraft.