**WILSON RESEARCH CORPORATION,**
**Plaintiff, Appellant,**

v.

**PIOLITE PLASTICS CORPORATION,**
**Defendant, Appellee.**

**No. 6128.**

United States Court of Appeals
First Circuit.

Dec. 26, 1963.

Rehearing Denied Jan. 24, 1964.

Robert B. Russell, Boston, Mass., with whom I. Stephen Samuels and Russell, Chittick & Pfund, Boston, Mass., were on brief, for appellant.

George W. Crowley, Boston, Mass., with whom Herbert P. Kenway and Kenway, Jenney & Hildreth, Boston, Mass., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

In this action for patent infringement the district court found validity but not infringement. We first recite the facts. On July 7, 1958 appellant's assignor, Wilson, filed an application which on August 15, 1961 ripened into patent #2,996,609. As finally allowed [1] the invention was described as a translucent plastic panel for light diffusing ceilings. In its "preferred form" (claims 1–3) the panel, which had "a supporting frame and a panel edge supported by said frame." [2] was composed of two plastic sheets having a "plurality of dimples," the dimples on each sheet "extending toward and abutting each other, and said sheets being united at the abutting portions of the side walls and at the bottoms of the dimples." Alternatively, the dimples were described as "registering with each other and being united. * * *" The specifications made clear that the word "united" meant "completely sealed," which not only gave the panel strength to prevent sagging, but permitted washing. No method of uniting was given, the specifications merely reciting that the sheets "may easily be united, for example, by heat sealing."

█ Appellant's commercial structure, and appellee's similar accused structure, directly followed the patent except that there was inserted between the upper and lower sheet during assembly a third sheet, described as a membrane, of thin, pliable material having a lower melting point. The combined sheets were submitted to electrical heat under pressure, which caused the membrane to become semifluid and, up-

---

1. Originally Wilson sought to regard the structure as having additional uses, such as wallboard.

2. A possible technical defense could be based upon this clause, but we consider it remediable, and waived.

on cooling, to adhere to, and hence seal, the top and bottom sheets at the edges and across the faces of the registering dimples. This process did not destroy the membrane, which remained to give added strength. Appellee took the position in the court below, and before us, that it was not infringing because within the meaning of the patent no substance could be inserted between the sheets for the purpose of causing adhesion, both by reason of the word "united,"[3] and because the patent stated that "the dimples of the upper and lower sheets were 'in face to face contact' " and "register with each other" and were "abutting." The district court adopted appellee's view and found that this language precluded "the interposition of a membrane, cement or other substance." In the light of this finding, although the court resolved the conflicting testimony upon which validity depended in favor of appellant, a matter we need no longer consider,[4] it concluded there was no infringement.

█ We disagree. The words "abutting" and "registering" are clearly positional in a broad sense. Nor does the word "united" deny the interposition of an adhesive.[5] We believe that "face to face contact" is to be read similarly. To

do otherwise would be to disregard the necessary implication of other language of the patent. The previously quoted reference in the specifications to "heat sealing" "for example" necessarily indicated that methods in addition to heat sealing were contemplated. We asked appellee if it knew of any method other than heat sealing which would not employ an interposed adhesive and it could think of none. Neither can we. Accordingly, since all other "examples" would include an adhesive, the court's excluding its use read the patent as calling for heat sealing "only," not heat sealing "for example."[6] Cf. Grant Paper Box Co. v. Russell Box Co., 1 Cir., 1946, 154 F.2d 729, 731, cert. den. 329 U.S. 741, 67 S.Ct. 79, 91 L.Ed. 639. Although we recognize that a trial court's interpretation of the language of a patent may in some cases constitute a finding of fact not to be reversed unless plainly wrong, the court's limitation of this patent to exclude adhesives warrants that description.

Appellant's difficulties, however, are not over. On June 1, 1960 Wilson filed an application for a "light transmitting ceiling panel" substantially identical with its, and appellee's, present commer-

3. In oral argument appellee retreated somewhat on this aspect.

4. We are not to be taken as passing on the validity of claims 4 and 5 as developed by appellant as, seemingly, an afterthought. In our view if appellant cannot succeed in this case on claims 1–3, it is not helped by the remaining claims. However, so far as claims 1–3 are concerned, validity was a clear decision of fact which we would not disturb. The broadening of the patent over the district court's interpretation, to include the use of an adhesive, would not weaken this finding. Indeed, insofar as appellee may argue invalidity because of inoperability, the inclusion of adhesive would answer it. Appellee's further contention that the patent insufficiently disclosed how an adhesive was to be applied overlooks undisputed testimony of what was already known to those skilled in the art. The presumption of validity may not be a very strong presumption, but it places some burden other than forensic upon an infringer.

We might add that for reasons hereinafter set forth we are not directly concerned with whether the prior art might have raised questions, as appellee asserts, if the interposed sheet were a necessary permanent part of the structure. We note, however, that the positioning of sheets was, for a number of reasons, a matter of great importance, as the file wrapper in this case demonstrates. We are satisfied that the district court's finding of validity would not be affected by the somewhat different construction we have given the patent.

5. E. g., Webster's New International Dictionary (2d ed. unabr.) gives as its first example, " * * * to unite bricks by mortar."

6. Indeed, the court went further. By excluding all use of an adhesive it eliminated even some methods of heat sealing, since appellee concedes this term to be applicable to the accused structure.

cial structures, in other words, having an interposed membrane.[7] This ripened into patent #2,996,417 on August 15, 1961, the same date as the '609 patent. Accompanying the original application was the usual justifying oath. However, passing a still further matter we need not deal with, more than a year earlier appellant had advertised in two trade publications the structure which it admits (fn. 7, supra) to be in accordance with this disclosure, and had made one commercial installation thereof. Shortly before trial Wilson filed a disclaimer of this entire second, or '417, patent. At the trial he stated that his oath had not been intentionally false, because he was not sure what was an invention and because his attorney had told him that the early installation had been "experimental," and he had forgotten the two advertisements. On this showing appellee makes a number of contentions, one of which is "unclean hands." The court, stated, "I do not find any evidence of unclean hands with respect to the application of the patent in suit." While this language is possibly not too exact, we assume it to mean that the court accepted Wilson's testimony that he did not perpetrate an intentional fraud in applying for the '417 patent which might have laid a foundation for a claim of unclean hands. This was a question of fact, and appellee has failed to meet its burden.

■ Appellee makes the further point that even if the '609 patent encompasses adhesives, the membrane is more than an adhesive, as was admitted by the '417 application in speaking of the third sheet's strengthening qualities, and that filing a disclaimer of this patent dedicated the invention to the public.[8] This argument does not go far enough. Once it is held that adhesives are within the patent, and accepting the undisputed evidence that an adhesive, within the then state of the art, could be inserted in the form of a sheet, the maximum difference between the '609 patent and the '417 patent was that the latter specified a sheet of such substance that it would remain intact instead of dissolving. If we assume, in appellee's favor, that the continued presence of the third sheet resulted in an improved structure sufficiently differentiated to constitute a new invention, an assumption possibly warranted by the fact that appellant obtained a separate patent on it, appellant's constructive abandonment or disclaimer thereof conveyed to appellee, as a member of the public, only that new invention, not the '609 patent. Although an improvement may produce a patentable difference, this does not necessarily negative infringement of the earlier patent. Cf. Frick Co. v. Lindsay, 4 Cir., 1928, 27 F.2d 59. Rather, it may be that "the second [patent] includes the first, [and] neither of the two patentees can lawfully use the invention of the other without the other's consent." Cantrell v. Wallick, 1886, 117 U.S. 689, 694, 6 S.Ct. 970, 973, 29 L.Ed. 1017.[9] Appellee can manufacture the '417 structure without a license only if it is so substantially different, by virtue of the membrane, that it does not fairly include the '609 invention. Apart from its adhesive function which we have found to be within the '609 patent we could not regard the mere addition of a strengthening member as having such consequences. Cf. Temco Elec. Motor Co. v. Apco Mfg. Co., 1928, 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298; Foster Metal Prods., Inc. v. Jacoby-Bender, Inc., 1

7. In its brief appellant states that Wilson filed the second application specifically to cover its commercial structure now copied by appellee. We must take this admission as foreclosing any thought, which we otherwise might have had, that the second patent disclosed a structure differing from the accused device.

8. 35 U.S.C.A. § 253. This contention raises a number of interesting questions of

statutory construction which we do not pursue, and perhaps more specifically the question why an entire patent should be disclaimed at all. Cf. Triplett v. Lowell, 1936, 297 U.S. 638, 643, 56 S.Ct. 645, 80 L.Ed. 949.

9. The second half of this principle, of course, is not applicable because appellant is as free to use the '417 invention as any other member of the public.

Cir., 1958, 255 F.2d 869, 875–876; Jonas v. Roberti, 9 Cir., 1925, 7 F.2d 563; see also Ackermans v. General Motors Corp., 4 Cir., 1953, 202 F.2d 642, cert. den. 345 U.S. 996, 73 S.Ct. 1139, 97 L.Ed. 1403; American Safety Table Co. v. Schreiber & Goldberg, 2 Cir., 1959, 269 F.2d 255, 264, cert. den. 361 U.S. 915, 80 S.Ct. 259, 4 L.Ed.2d 185. It follows that the '609 patent stands infringed.

We find no abuse of discretion in the award of costs to appellee on the dismissed count for unfair competition.

Judgment will be entered vacating the judgment of the District Court and remanding the action to that court for further proceedings not inconsistent herewith.