### WESTERN STATES MACH. CO. v. FERGUSON.

#### No. 349.

District Court, D. Rhode Island.
March 14, 1931.

George N. Goddard, of Boston, Mass., and E. Butler Moulton, of Providence, R. I., for complainant.

Walling & Walling and Harry Dexter Peck, all of Providence, R. I., for respondent.

LETTS, District Judge.

This is a suit in equity brought to restrain the respondent from manufacturing a basket screen to be used in connection with a centrifugal sugar machine.

It is claimed that the respondent's screen constitutes an infringement upon letters patent No. 1,108,098, issued to the Sugar Centrifugal Discharger Company, August 18, 1914, to whom all rights in the patent were assigned during the pendency of the application by Eugene Roberts and Angus H. Gibson, the alleged inventors.

The application for the patent in question was filed February 13, 1913. Following the granting of the patent and before the alleged infringement by the respondent, the Sugar Centrifugal Discharger Company in turn assigned all its rights under said patent to the complainant in this suit, the Western States Machine Company.

It was agreed that at some time subsequent to the issuance of the patent the respondent manufactured and sold screens similar in design and character to those manufactured by the complainant, in accordance with the claims and teachings of the patent. The respondent was given notice by complainant of its claim of infringement. There is, however, no evidence that subsequent to the receipt of such notice by the respondent any screens were either manufactured or sold. Before the close of complainant's case, with this state of the record before them, counsel for both parties stipulated that there was involved no question of damages and that the only issue was that of the validity of the patent and the right of the complainant, in event the patent should be held to be valid, to an injunction restraining the respondent from any further or future infringement.

The case as tried presents two defenses: First, that the patent is invalid for lack of invention; and, second, that the improvements in the basket screen embodied in the patent claims here in issue were in fact not first invented by Roberts and Gibson, but by one Kaufman of Brooklyn, N. Y. In the course of the trial counsel for the complainant contended that only the latter of these two defenses was before the court, maintaining that the defense of invalidity, because of lack of invention, was not raised by the pleadings.

While this situation may somewhat narrow the scope of the inquiry and consideration which the court may properly give to the question of whether the patent is invalid for lack of invention, it is well settled law that the question of whether an alleged invention is patentable is always open to the consideration of the court, whether the point is raised by the answer or not. Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719; Stimpson v. Woodman, 10 Wall. 117, 19 L. Ed. 866; Slawson v. Grand Street, etc., R. Co., 107 U. S. 649, 2 S. Ct. 663, 27 L. Ed. 576; Jones v. Cyphers et al. (C. C. A.) 126 F. 753.

In other words, it is clear that while the failure of a respondent to raise expressly by his answer the issue of lack of invention and to properly plead anticipations of the invention alleged may limit the purpose for which examples of prior art may be offered in evidence, such failure does not preclude the court from considering whether the patent should have been granted, in view of the state of the prior art and such matters of common knowledge of which judicial notice may properly be taken.

We will first consider the defense that the improvements involved in the patent claims were developed by Kaufman and were not first invented by Roberts and Gibson. In regard to the existence of the difficulty to be overcome, there is no dispute. It appears that in the spring of 1912 some "Roberts and Gibson automatic dischargers" were installed in the Havemeyer & Elder plant of the American Sugar Refining Company where Messrs. Kaufman and Black, two of the witnesses who testified for the respondent, were employed; the former in the capacity of a tinsmith and the latter as an engineer.

The discharger consists of a device suspended within the centrifugal machine by an adjustable bracket and has a member called a plow with a flat fiber nose which scrapes the sugar from the surface of the screen lining the basket in the process of eliminating the juice or liquid through the holes in the screen by centrifugal action. When these dischargers were first installed, trouble arose because of the buckling of the screen resulting from friction caused by the fiber nose of the plow member of the discharging device.

It appears that when the expedient of soldering the ends of the basket lining was used the trouble of the buckling of the screen, because there was no provision for expansion or contraction, resulted. When this difficulty was attempted to be overcome by not engaging the two ends of the screen in a solid joint, but having the ends overlap one another thus permitting an expanding and contracting action, trouble arose from the sugar working between the overlapping ends causing a bulge or irregularity on the surface of the revolving screen against which the fiber nose rubbed.

To overcome both difficulties, a lock and lap joint was devised, substantially as described in the claims of the patent. This device is a relatively simple one. It consists of making a series of elongated perforations or slots adjacent to, and parallel with, the edge of one end of the screen, the other end of the screen being slit transversely to its edge inwardly for a few inches, so that the end consists of a series of tongues in width about equal to the length of the slots cut in the other end of the screen, there being adapted one slot opposing each alternate tongue. By inserting each alternate tongue in the opposing slot and each other alternate tongue underneath the end or edge of the screen, a firm, tight interlocking joint results so that when the screen is placed in the basket a smooth surface is presented to the nose of the plow at the same time permitting any necessary expansion or contraction of the screen, thus overcoming the difficulty of its buckling.

In respondent's answer it is alleged that this device was invented by Kaufman. At the time of the trial Black testified that it was he who first hit upon the idea and embodied it in a small pattern from which Kaufman, the tinsmith, prepared the first linings which were used in the centrifugal machines at the Havemeyer & Elder plant. It was further claimed that the management of this plant purchased no screens or linings from the complainant made under the patent in question but that their linings had all been made as Kaufman and Black testified. The testimony of these two witnesses is to the effect that the design of this lock lap joint embodied by Roberts and Gibson in their application was obtained from this source. It is obvious that were the testimony of Kaufman and Black, partially corroborated by witness Bell, accepted, the defense to the patent now under consideration would be established. In sharp conflict with the testimony of these witnesses, however, is that of Roberts and Gibson, corroborated in large measure also by witness Lillja. These witnesses, whose testimony in some respects is somewhat more consistent than that of the witnesses for the respondent, is to the effect that Roberts and Gibson alone developed the joint in question and were neither anticipated nor assisted by anything done by Kaufman or Black.

One group or the other of these witnesses is not telling the truth. I am unable, with full confidence, to determine which. It is clear, however, that although Black and Kaufman long since had notice of the application and the granting of the patent, they have never until the present proceeding, years after, asserted the invention was theirs. Such a course of conduct on their part weighs heavily against the credibility of their testimony.

The situation clearly falls within the rule of law that when a respondent seeks to

establish anticipation by means of oral testimony he must do so by proof that leaves no reasonable doubt as to the fact. In discussing this rule of law the court, in the case of Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co., 143 U. S. 275, 12 S. Ct. 443, 447, 36 L. Ed. 154, in part said:

"Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are not usually to be depended upon for accurate information. The very fact, which courts as well as the public have not failed to recognize, that almost every important patent, from the cotton gin of Whitney to the one under consideration, has been attacked by the testimony of witnesses who imagined they had made similar discoveries long before the patentee had claimed to have invented his device, has tended to throw a certain amount of discredit upon all that class of evidence, and to demand that it be subjected to the closest scrutiny. Indeed, the frequency with which testimony is tortured, or fabricated outright, to build up the defense of a prior use of the thing patented, goes far to justify the popular impression that the inventor may be treated as the lawful prey of the infringer. The doctrine was laid down by this court in Coffin v. Ogden, 18 Wall. 120, 124 [21 L. Ed. 821], that 'the burden of proof rests upon him (the defendant), and every reasonable doubt should be resolved against him. * * *' This case was subsequently cited with approval in Cantrell v. Wallick, 117 U. S. 689, 696, 6 S. Ct. 970 [29 L. Ed. 1017], and its principle has been repeatedly acted upon in the different circuits. Hitchcock v. Tremaine, 9 Blatchf. 550 [Fed. Cas. No. 6,540]; Parham v. American Buttonhole Machine Co., 4 Fish. Pat. Cas. 468 [Fed. Cas. No. 10,713]; American Bell Telephone Co. v. People's Telephone Co. [C. C.] 22 F. 309." Ideal Jewelry Co. v. Payton (D. C.) 300 F. 422; Eibel Co. v. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523.

I am of the opinion that the respondent has not furnished adequate proof of the prior making of the device to overcome the presumption in complainant's favor arising from the grant of the patent.

There remains only the question of whether from the record presented this court is justified in holding the patent to be invalid for lack of patentable invention.

The respondent contends that what was done by Roberts and Gibson, when considered in connection with the prior art, was nothing more than the exercise of mechanical skill, as distinguished from invention. There were offered in evidence several prior patents, the teachings of which it is claimed disclose substantially the same method of overcoming the difficulty or problem which Roberts and Gibson had to solve in designing their basket lining. In support of this contention, emphasis by counsel for the respondent is placed upon three patents: The Milligan patent granted in 1875; the Davidson and Flender patent granted in 1891; and the Patterson patent granted in 1909.

The first two of these have to do with joints for sheet metal tubes to be used for stovepiping, water conductors, and other purposes, the joints being so designed that the sheet material may be nested for purposes of shipment and the joints quickly assembled when and where the tubing is to be installed. In general, both patents provide for a joint or seam to be effected by inserting metal tongues which have been cut on one end of the sheet of metal through slots in the opposing end and then, by bending back the tongue so as to form a hook, a firm and fixed joint is effected. Obviously these patents relate to a totally different art than does the Roberts and Gibson patent. The purpose to be accomplished in both the Milligan patent and the Davidson and Flender patent is a fixed joint. A screen made in accordance with the design shown in these patents, even though the tongues were not bent back to form a hook, would not function as does the Roberts and Gibson joint.

The Patterson patent discloses a design for a screen lining for a centrifugal separator and, while intended for the purpose of removing oil or grease from such materials as cotton or woolen waste, can perhaps be regarded as an analogous art. The claims in the Patterson patent are general in character and, so far as they relate to the joint, claim only "means for detachably connecting the adjacent edges" of the screen. In the disclosures of the patent, however, there is shown a joint consisting of two posts with button heads affixed to one end of the screen, which are to be inserted through openings made in the opposing end of the screen, equal to the size of the end or button of these posts, which are then slid forward into slots the size only of the body of the post which, being smaller than the button head, prevents any substantial lateral separation of the two ends and also affords a firm joint as the screen is expanded by pressure of the material being revolved in the interior of this screen.

This device is not only dissimilar to that designed by Roberts and Gibson, but if used in a centrifugal sugar machine would not overcome the difficulties which the patent in suit was designed to solve. In the first place, the button device disclosed by Patterson would mitigate against a flat, smooth joint necessary for the operation of the automatic discharger which constantly scrapes the inside of the screen when the machine is in motion. The joint further involves the overlapping of the ends of the screen in such a manner that, if there were to be the necessary freedom of play to provide the desired expansion and contraction of the screen, there would be present the same difficulty experienced in the Havemeyer & Elder plant when the overlapping screen joint was first used, namely, that of sugar particles working underneath the overlapping end and creating a ridge or bulge, with which the nose of the plow member of the discharger would come in rigid contact and cause damage to the screen.

It seems apparent from an examination of the two devices that the Roberts and Gibson joint much better guards against a lateral separation of the ends of the screens, thereby preventing the lodgment of sugar particles, and at the same time provides a smoother joint against which the plow member will operate, together with full freedom for the necessary expansion or contraction within the basket of the sugar machine. It is clear that the Roberts and Gibson joint represents an improvement upon any joint which had previously been used for the purpose for which it was designed. It represents a useful improvement, rendering more practical the employment of the automatic discharging device in place of the old hand ladle method.

I find that the presumption of validity of each claim of the patent has not, by the evidence here presented, been overcome.

A draft decree, consistent with these findings, may be presented for settlement.