HAP CORPORATION, Defendant,
Appellant,

v.

HEYMAN MANUFACTURING COMPA-
NY, Plaintiff, Appellee.

HEYMAN MANUFACTURING COMPA-
NY, Plaintiff, Appellant,

v.

HAP CORPORATION, Defendant,
Appellee.

Nos. 5929, 5939.

United States Court of Appeals
First Circuit.

Heard Oct. 2, 1962.

Decided Nov. 20, 1962.

Rehearing Denied Jan. 9, 1963.

**840**

William R. Liberman, New York City, with whom Max Schwartz and Walter Adler, Providence, R. I., were on brief, for Hap Corp.

Delevan Smith, New York City, with whom John H. Chafee and M. Arthur Auslander, New York City, were on brief, for Heyman Mfg. Co.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

Heyman Manufacturing Company sued Hap Corporation for infringement of two patents. Hap counterclaimed for infringement of four others. The district court found for plaintiff on one patent, and for plaintiff in counterclaim on two. 196 F.Supp. 447. On these appeals each party has accepted one defeat, so that now four patents are involved.

Both parties have been engaged for many years in the metal stamping business making, *inter alia*, blades to be inserted (in pairs) in plugs by which household electrical cords, or conductors, can be connected with wall receptacles, or outlets. The problems needed to be met in the manufacture of plug and cord assemblies are the establishment of an electrical union between the blade and the wire, and the obtaining of a secure overall connection to withstand abuse by users who, in removing from the receptacle, pull on the cord instead of the plug. Until after World War II both problems were usually, although not always, met in this type of plug by soldering the wire to the blade. This method was time-consuming, and so produced high labor costs. In March, 1947, one Klumpp, assignor to plaintiff Heyman, filed an application for a solderless blade, which was granted as Patent No. 2,476,738 on July 19, 1949. The Patent Office proceedings resulted in the abandonment of all seven original claims because of prior art, or because purely functional, and the adding of three more, one of which was early accepted and became claim 1, and two of which, after extensive revision, became claim 2, the only allowed claims. Our very considerable difficulty with this patent comes in part from the court's failure to deal with this history, an error possibly it was led into by accepting as a patent expert for Heyman a man with very valuable experience in the cord assembly field, but who admittedly knew nothing about patents, and who testified freely about this one without having looked at, let alone comprehended, the file wrapper. We have indicated the superficiality of such an approach before. Unistrut Corp. v. Power, 1 Cir., 1960, 280 F.2d 18; Progressive Engineering, Inc. v. Machinecraft, Inc., 1 Cir., 1959, 273 F.2d 593, 598. See also Carter Prod-

ucts, Inc. v. Colgate-Palmolive Co., 4 Cir., 1959, 269 F.2d 299; Moon v. Cabot Shops, Inc., 9 Cir., 1959, 270 F.2d 539, cert. den., 361 U.S. 965, 80 S.Ct. 596, 4 L.Ed.2d 546.

The '738 patent shows an elongated metal strip, bent back on itself, the bend forming the apex of the ultimate blade. One returning end terminates with (claim 1), or without (claim 2), a right-angle positioning ledge for firmer location within the plug. The other, longer, returning end terminates with two sets of lugs, or clamps. In assembly with the cord the inner lugs are crimped over the exposed end of one of the wires, and the outer set over its insulation. During the prosecution the examiner pointed out, and the evidence at the trial abundantly shows, that solderless clamps for bare wire, and various methods of gripping insulation, were old; that it was not invention to combine the two, and that the novelty, if any, was in the method. It was further evident that there was no novelty in Klumpp's bare wire clamps, or in the claim 1 positioning ledge. As the examiner said, "Invention, if any, lies only in insulation gripping means." These means, in the stamped, pre-assembly blade, which is the patent, are described as follows.

Claim 1. "* * * a one piece strip * * * terminating in a bent over end divided so as to receive an insulated electrical conductor therebetween, each division having a finger at its end initially extending at an acute angle inwardly toward the other as well as toward the conductor and adapted to be forced into the insulation of the conductor on opposite sides of a diameter thereof * * *."

Claim 2. "* * * a one piece strip * * * terminating in a bent over end * * * consisting of two portions spaced so as to receive the outer insulation of an electrical conductor therebetween, each of said spaced portions terminating in a finger projecting outwardly at an angle to the plane of said portion, said spaced portions being adapted to be forced downwardly and toward the plug contact portions while the said fingers are adapted to be simultaneously forced downwardly and inwardly toward each other into gripping position over the insulation of the conductor * * *."

Claim 1 requires no extensive consideration. We are unwilling, and particularly so in the light of the claim history, to accept "forced into the insulation * * * on opposite sides of a diameter thereof" as meaning, or equivalent to, within a single semicircle, viz., on the *same* side of a diameter. Heyman contends that this phrase is satisfied by placing the fingers within the top semicircle, one on each side of a "vertical" diameter. Such an interpretation would seem meaningless. It would be almost impossible to place two fingers so that they did not satisfy "on opposite sides of a diameter" within this construction. The drawings do not show fingers adjacent to each other within a single semicircle, but fingers extending to the point of being diametrically opposite each other, which exactly fits the phrase in question. Perhaps even more important, Heyman's contention would mean that there was no essential difference between "on opposite sides of a diameter," claim 1, and merely "over the insulation," claim 2.[1] The file history shows a preoccupation on the part of the examiner with the exact positioning of the "gripping." He readily allowed claim 1. We think this was clearly because he considered it as having the

---

1. Heyman in fact argues that there is no difference between claim 1 and claim 2 except for the presence in claim 1 of the positioning ledge earlier referred to. This not only ignores the difference in language we are presently discussing, but again ignores the file history. The examiner pointed out, and plainly established, that there was no novelty in the positioning ledge. Thus there would have been no reason for allowing claim 2 if there were not some other, significant, difference.

specificity we have just outlined for the location for the fingers. The claim language must be taken to mean what it says. Cf. *Moon v. Cabot Shops, Inc.*, supra. On this basis there is no infringement, for the fingers of the accused device have not been shown to fall within this description.[2] The balance of this opinion will, accordingly, deal only with claim 2.

We observe, preliminarily, that the insulation grips, as described in the specifications, were produced by removing a central portion of the longer returning end so as to leave two separated what we shall call prongs, termed in the patent "spaced portions." Each of these, in turn, terminates in a tab or "finger projecting outwardly at an angle to the plane of said portion." It is clear that "outwardly" is in the direction of the cord, or away from the blade end, the blade end being "inward," (*i. e.*, toward the major bend in the strip). The latter is demonstrated by the specifications quoted immediately *infra*, which define "inwardly" "as shown by figure 6." Figure 6 shows a bend toward the blade end. Correspondingly, "outwardly," with specific reference to the direction of the fingers, was twice defined in a letter to the examiner "as shown in figure 3." Figure 3 shows the projection away from the blade end.

The prongs, in turn, are bent upwards,[3] so that in assembly they will receive, and flank, the wire. The specifications are explicit as to the total function. The prongs, or spaced "portions 4 and 5 have fingers 7 and 8 respectively which are adapted to be bent on diagonal lines or at acute angles with respect to the axis of the conductor so as to grip the insulation * * * after the parts 7 and 8 are forced toward each other over the insulation at the same time that the portions 4 and 5 are bent inwardly, as shown in figure 6." Throughout the processing, the importance of detail was emphasized by the examiner. In criticising an earlier-phrased claim he said that it failed to "set forth physically the *specific* elements that are to grip the insulation * * *. The portions furthermore are at a definite angle to the *fingers* and it appears that this angle is maintained when the insulated conductor is secured to the blade * *. Upon bending the portions to an acute angle with respect to the plane of one of the blade legs, [*i. e.*, "towards the plug contact portions," to quote the eventual claim] the overhanging metal will engage the insulation of the conductor, particularly the apex formed on the line of bend between the portions and the fingers. This is considered the exact point of novelty and may not be defined merely as 'spaced portions having outwardly extending fingers'." (ital. in orig.) A similar comment is quoted *infra*.

With this background we turn to the question of infringement. On this the district court gives us no assistance. After quoting both claims in full, and reciting Heyman's commercial success, the court simply states that "said patent '738 is valid * * * [that the] credible evidence satisfies me that the plaintiff's blades are made in accordance with the disclosures of said patent[4] * * * [and that because Hap used in its advertising a copy of a drawing of the plain-

2. Heyman's disposal of the word "diameter" as "a semantic convenience," and of Hap's contentions as "subtle reasoning," is less than constructive. Its explanation of the extensive file wrapper history of both claims as being mere "semantic interplay" warrants equal if not sharper comment.

3. Many of Hap's defenses stem from the fact that the patent drawings show this as a right-angle bend. We have considered all of these arguments, and shall

not further refer to them. But we observe at this point that the phrase "right-angle bend" was once in the claims, and was removed. Furthermore, portions of a drawing that are not even indirectly defined in the specifications or claims are not limitations in any event.

4. This is a perhaps debatable question which we need not go into, except to say that it would have been better to have tested the accused device directly against the patent.

tiff's product] [t]he conclusion is inescapable that the defendant has deliberately infringed the plaintiff's patent '738 * * *." The court did not analyze the claims, or the differences between them. Nor did it resolve any of the conflicts in the testimony, or make findings of fact in accordance with Federal Rules of Civil Procedure, rule 52(a). In this posture we have two alternatives; either to remand the action for findings or, if we determine that the evidence viewed most favorably to Heyman would not warrant a finding of infringement, to dismiss this portion of the complaint.

In our opinion, dismissal is the proper course. The accused insulation gripping device departs in at least two particulars from the provisions of claim 2 of the patent. Most obvious is the fact that its fingers project "inwardly," and not "outwardly." Secondly, we do not agree with Heyman's contention that the "spaced portions [are] adapted to be forced * * * toward the plug contact portions." It is true that its expert testified, simply from drawings of the accused device, that they were so "adapted." Although examination of the accused device might suggest doubts as to the adaptability, particularly in the manner described in the patent, for present purposes we will assume that such movement was practical as well as possible. However, there was no testimony that it was done. This is a functional device. The question is not what it might have been made to do, but what it was intended to do and did do. If it did not function in an equivalent manner it was not an equivalent device. The opinion of a witness some years after the event that a device could have been made to do something else does not of itself establish infringement. The accused blade could be used only with a machine especially made for the purpose. On the undisputed evidence Hap's assembly machine did not project the spaced portions "toward the plug contact portions," but solely downward towards the wire. Hap calls this a 90° difference. Whether it was or not, it did not follow the teachings of the patent. Cf. John Waldron Corp. v. Equitable Paper Bag Co., 3 Cir., 1939, 106 F.2d 724.

In the aggregate these differences were important. Nothing is clearer on the record than the accuracy of the examiner's observation, in rejecting earlier broad claims, that "Insulation gripping tongues, barbs and the like are considered conventional, and especially so in solderless connectors * * *." The examiner was consequently properly insistent upon specificity. "How are the fingers spaced? How do they move toward the insulation? Just what is the 'gripping position'?" The applicant supplied specific directions. Heyman now asks us to reverse one of them from "outwards" to "inwards," and to ignore the other entirely. We cannot apply the doctrine of equivalents with so lavish a hand unless we say that any gripping device which has "fingers" is an equivalent. In the then state of the art, the examiner constantly refused to take such a view. So must we. Cuno Engineering Corp. v. Meehl, 2 Cir., 1940, 113 F.2d 862; Moon v. Cabot Shops, Inc., supra.

The second part of Hap's appeal relates to the court's conclusion that its Patent No. 2,198,966, issued April 30, 1940 is invalid. This is a machine patent for inserting blades into plugs. The court relied on two prior patents, one of which was not cited by the examiner. Hap admitted a very considerable relevancy of the latter, although, of course, disputing its sufficiency. We have reviewed the record as to invalidity, but do not think any useful purpose would be served by discussing it, particularly as this patent has now expired. Suffice it to say that this was a factual situation, and that we are not prepared to say the court was plainly wrong.

Heyman's cross-appeal also raises essentially only questions of fact. Hap's counterclaim, inter alia, sought damages for infringement of two of its patents, Nos. 2,191,384 and '385, issued February 20, 1940. These were patents for machines for inserting assembled blades into flexible rubber plugs. Heyman's

defense was that Hap's assignor, Herman, was not the real inventor, but that the invention had actually been conceived by one Bronstein. Considerable testimony was presented by both sides on this issue. This included testimony by Bronstein that he himself had sought to obtain patents, but had dropped his proceedings upon payment of $2700 by Herman after his attorney had become discouraged by Herman's exhibition of certain documentary evidence. Heyman offered testimony that this evidence had been forged, which was, of course, disputed. The court concluded that it "was far from impressed by [Bronstein's] testimony and [was] not satisfied that he was the inventor of said structure." Heyman did not contest infringement. The court, accordingly, found in favor of Hap.

■ In the course of its opinion the court, quite properly, referred to the heavy burden that is upon a party contesting a patent by asserting that the applicant was not the inventor, following The Barbed Wire Patent (Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.), 1892, 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154. Heyman seeks to distinguish this case on several grounds, none of which needs mention except its contention that the rule ought not to apply when there has been fraud. Even if this might be so, it is first necessary to establish the fraud.

■ Even if, which we need not decide, Hap's witnesses were not always consistent, it is clear that Heyman's were not, and we could not possibly say that the court's findings against it are plainly erroneous.

■■ Heyman also seeks, on this appeal, to have us find that the '384 and '385 patents were anticipated. Not having disputed the issue of validity below,

it cannot do so now in order to obtain a reversal. It is not enough that the record may contain evidence on which appellant may piece together a case.[5]

Judgment will be entered vacating paragraphs 1 and 2 of the judgment of the district court and dismissing the complaint with respect to Patent No. 2,476,738, and affirming the balance of the judgment appealed from. Printing costs in this court in proportion to the successful portions of the appeals.

### On Petition for Rehearing.

■■ Heyman's petition for rehearing raises one matter that possibly should have been articulated in connection with our vacation of paragraph 1 of the district court's decision. This paragraph was a conclusion that the '738 patent was valid. Our finding of noninfringement made that question presumably moot. "To hold a patent valid if it is not infringed is to decide a hypothetical case." Altvater v. Freeman, 1943, 319 U.S. 359, 363, 63 S.Ct. 1115, 1117, 87 L.Ed. 1450. But cf. Hawley Products Co. v. United States Trunk Co., 1 Cir., 1958, 259 F.2d 69. However, for us simply to have dismissed this portion of the appeal as moot would have left the district court's determination of validity outstanding although the rationale of our opinion had undercut its basis. Consequently our minimum obligation was to set the finding aside. This action did not imply that either or both of the claims of the patent were invalid, but left the matter open. Whether we should then go further and pass on the issue of validity for future purposes was perhaps a question of discretion, but one which we resolved in the negative. Cf. Hale v. General Motors Corp., 1 Cir., 1945, 147 F.2d 383, 388. We adhere to that position.

The petition for rehearing is denied.

5. It is true that Heyman's answer alleged invalidity of these patents. However, portions of an answer may of course be waived. In its opinion the court said, "The sole issue with respect to these patents is—was the said Herman the inventor * * *." 196 F.Supp. 447, 452.

If this was not the sole issue Heyman should have complained forthwith. Fleming v. Van Der Loo, 1947, 82 U.S.App. D.C. 74, 160 F.2d 906. It is now too late. Maloney v. Brandt, 7 Cir., 1941, 123 F.2d 779.